Fort Wayne TELSAT, Plaintiff,

v.

ENTERTAINMENT AND SPORTS
PROGRAMMING NETWORK,
Defendant.

No. 90 Civ. 2301 (PKL).

United States District Court,
S.D. New York.

Dec. 11, 1990.

Law Offices of Ridley M. Whitaker (Ridley M. Whitaker, John P. Markos, Leonard N. Flamm, of counsel), New York City, for plaintiff.

Patterson, Belknap, Webb & Tyler (Frederick T. Davis, Douglass B. Maynard, of counsel), New York City, for defendant.

## ORDER AND OPINION

LEISURE, District Judge:

This is an action by Fort Wayne Telsat ("Telsat") against ESPN, Inc. ("ESPN"),[1] for violations of the federal antitrust laws, and for pendent state law claims of unfair competition and interference with prospective business relations. ESPN has now moved to dismiss the complaint in this action, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

## BACKGROUND

This case involves the distribution of programming for "subscription television." Subscription television, unlike broadcast television, requires individual viewers to pay a fee to receive programming. Cable television, which is distributed to individual viewers by means of a cable or wire, is a common form of subscription television. Another method of subscription television is known as "multichannel multipoint distribution service" ("MMDS"), which employs microwave transmission to distribute programming to viewers.

In general, there are three links in the chain of distribution of subscription television. At the beginning of the chain are "programmers," who assemble programming by creating their own television programs or by purchasing the rights to motion pictures, other television programs, or other events, such as sporting events. Programmers are, in effect, the manufacturers and wholesale distributors of subscription programming. The second link is constituted by the "operators," local companies that receive subscription programming from the programmers and, then, much like retailers, distribute the programming of various programmers to the viewers.[2] With respect to operators using cable technology, in most instances a single operator serves an area under an exclusive franchise granted by the local municipal or county authority. The final link of the chain is made up of "subscribers," *i.e.*, industry parlance for viewers, who pay the operator a monthly subscription fee to receive the programming.

In the case at bar, defendant ESPN is a nationwide programmer, emphasizing

---

1. ESPN is incorrectly named in the suit as "Entertainment and Sports Programming Network."

2. Operators also receive broadcast programming, which they distribute to viewers in a package with nonbroadcast programming.

sports programming. ESPN sells its programming to operators pursuant to license agreements, granting those operators the right to retransmit that programming within a particular geographic area. Plaintiff Telsat is an operator that markets MMDS to subscribers in Indiana, and does not operate under a local franchising authority. Instead, Telsat competes with local cable operators, as well as with local broadcast television stations.

## DISCUSSION

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.1990); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980))).

Thus, a motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). In deciding a motion to dismiss, the Court must accept the plaintiff's allegations of fact as true, together with such reasonable inferences as may be drawn in his favor. *Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Murray v. Milford*, 380 F.2d 468, 470 (2d Cir.1967); *Hill v. Sullivan*, 125 F.R.D. 86, 90 (S.D.N.Y.1989) ("all allegations in plaintiffs' amended complaint

must be accepted as true and liberally construed."); *see also Scheuer, supra*, 416 U.S. at 236, 94 S.Ct. at 1686. Federal Rule of Civil Procedure 8(a) requires only a "'short and plain statement of the claim' that will give the defendant fair notice of what plaintiff's claim is and the ground upon which it rests." *Conley, supra*, 355 U.S. at 47, 78 S.Ct. at 102 (quoting Fed.R. Civ.P. 8(a)).

Nevertheless, the complaint must set forth enough information to suggest that relief would be based on some recognized legal theory. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y.1988) (Leisure, J.). "The District Court has no obligation to create, unaided by plaintiff, new legal theories to support a complaint." *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1081–82 (D.C.Cir.1984). "In practice 'a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory.'" *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984) (quoting *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir.1984) (Posner, J.) (emphasis in original) (quoting *French Quarter Apartments Ltd. v. Georgia–Pacific Corp.*, 655 F.2d 627, 641 (5th Cir.1981), *cert. dism'd*, 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983))), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).

Having set forth the standards for evaluating motions under Rule 12(b)(6), the Court now addresses the sufficiency of Telsat's claims.

*First Claim: Monopolization of Market for Subscription Television*

■ Telsat's first claim is brought under § 2 of the Sherman Act, 15 U.S.C. § 2,[3] alleging monopolization by ESPN of the "market for subscription television programming services for quality sports programming in the United States." Com-

---

**3.** Section 2 reads, in relevant part, as follows: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part

of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony...." 15 U.S.C. § 2.

plaint ¶ 43. "The offense of monopolization under § 2 of the Sherman Act consists of two elements: (1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Volvo North America Corp. v. Men's International Professional Tennis Council*, 857 F.2d 55, 73 (2d Cir.1988) (*citing Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 596 n. 19, 105 S.Ct. 2847, 2854 n. 19, 86 L.Ed.2d 467 (1985) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966)); *National Association of Pharmaceutical Manufacturers v. Ayerst Laboratories*, 850 F.2d 904, 915 (2d Cir.1988)); *see also Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990).

■ Section 2 of the Sherman Act is "aimed ... at the acquisition or retention of effective market control." *United States v. Griffith*, 334 U.S. 100, 107, 68 S.Ct. 941, 945, 92 L.Ed. 1236 (1948). It is designed to prevent "a pernicious market structure in which the concentration of power saps the salubrious influence of competition." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 272 (2d Cir.1979), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). Ordinarily, the Court may infer the existence of monopoly power from a predominant share of the relevant market. *United States v. Grinnell Corp.*, 384 U.S. 563, 571, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966). Here, Telsat has alleged in its complaint that "ESPN, by far the largest sports programming service abusively dominates the market." Complaint ¶ 13. Although inartfully punctuated, this allegation, immediately following an allegation that the relevant market "is the market for subscription television programming services for quality sports programming," Complaint ¶ 12, sufficiently avers a predominant share of the relevant market to permit an inference of monopoly power. *Grinnell, supra*, 384 U.S. at 571, 86 S.Ct. at 1704; *see also Telectronics, supra*, 687 F.Supp. at 838.

■ The second element of a § 2 monopolization claim requires an allegation that ESPN willfully engaged in anticompetitive behavior in the relevant market. *Volvo, supra*, 857 F.2d at 73. "The mere possession of monopoly power does not *ipso facto* condemn a market participant. But, to avoid the proscriptions of § 2, the firm must refrain from conduct directed at smothering competition." *Berkey, supra*, 603 F.2d at 275. *See also Aspen Skiing, supra*, 472 U.S. at 602, 105 S.Ct. at 2857 ("there is agreement on the proposition that 'no monopolist monopolizes unconscious of what he is doing.'" (quoting *United States v. Aluminum Company of America*, 148 F.2d 416, 432 (2d Cir.1945) (L. Hand, J.)); *Northeastern Telephone Co. v. American Telephone and Telegraph Co.*, 651 F.2d 76, 84–85 (2d Cir.1981) (*citing Berkey, supra*, 603 F.2d at 275), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 654 (1982). Thus monopoly power is not unlawful *per se*, but rather becomes illegal when the result of anticompetitive behavior in the relevant market.

■ In paragraph 20 of the complaint, Telsat avers that "ESPN has ... (iv) induced and coerced various cable operators to enter into contracts or otherwise agree to actions that allows defendant ESPN to monopolize ·... and restrain trade unreasonably in the market for subscription television programming services in the United States." Complaint ¶ 20. Although this allegation does not specify the particular cable operators that ESPN has induced and coerced as part of its alleged anticompetitive scheme, the Court cannot find that Telsat has failed to meet the liberal pleading requirements of Rule 8 with respect to its monopolization claim. Telsat has adequately alleged monopoly power, as well as anticompetitive conduct, on the part of ESPN. *Volvo, supra*, 857 F.2d at 73. Hence, ESPN's motion to dismiss Telsat's first claim must be denied.

*Second Claim: Conspiracy to Monopolize*

■ Telsat alleges in its second claim that ESPN's conduct with certain unnamed

cable operators constitutes a "combination or conspiracy to monopolize the market for subscription television programming services in the United States." Complaint ¶ 47. To prevail on such a claim under § 2 of the Sherman Act, Telsat must allege and prove "(1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize." *Volvo, supra,* 857 F.2d at 74. " 'It need not be shown that monopoly power has been attained, nor that if the conspirators continued in their course unmolested they would have attained it, but only that obtaining such power is the purpose which motivates the conspiracy.' " *Telectronics, supra,* 687 F.Supp. at 838 (quoting L. Sullivan, *Antitrust,* § 49, at 132–33 (1977)).

Telsat's only allegations of concerted action state that "ESPN has combined or conspired with certain cable system operators to monopolize the market for subscription television programming services by coercing and inducing the cable operators, *inter alia,* (i) to refuse to agree to offer ESPN to Telsat (ii) to discriminate against and disadvantage Telsat in promotion and marketing its services." Complaint ¶ 48. "Although the Federal Rules permit statement of ultimate facts, a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal." *Heart Disease Research Foundation v. General Motors Corp.,* 463 F.2d 98, 100 (2d Cir. 1972); *see also Garshman v. Universal Resources Holding Inc.,* 824 F.2d 223, 230 (3d Cir.1987) ("The allegation of unspecified contracts with unnamed other entities

to achieve unidentified anticompetitive effects does not meet the minimum standards for pleading a conspiracy in violation of the Sherman Act."); *Telectronics, supra,* 687 F.Supp. at 838–39 (dismissing § 2 conspiracy claim for failure to name alleged co-conspirators). Telsat's allegations thus fall well short of the information required by law to plead concerted action as part of a § 2 conspiracy claim, and therefore ESPN's motion to dismiss that claim is granted.[4]

*Third Claim: Attempted Monopolization*

Telsat's third claim alleges that ESPN's conduct "constitutes an attempt to monopolize the subscription television programming services market in the United States" in violation of § 2 of the Sherman Act. Complaint ¶ 51. Such a claim requires proof of three elements: "(1) anticompetitive or exclusionary conduct; (2) specific intent to monopolize; and (3) a dangerous probability that the attempt will succeed." *Volvo, supra,* 857 F.2d at 73–74; *see also Ayerst, supra,* 850 F.2d at 915.

As the Court has already found, *supra,* with respect to Telsat's monopolization claim, Telsat has adequately alleged anticompetitive conduct by ESPN. Complaint ¶ 20. Telsat has also set forth an allegation of specific intent to monopolize in paragraph 22 of its complaint, where it alleges: "ESPN has engaged in an integrated series of predatory acts and strategies designed to impose prohibitive costs on competitors in the market for subscription television programming services in the United States, to raise barriers to entry

---

**4.** The Court need not, and will not, consider the affidavit of E. Roger Williams, submitted in support of ESPN's motion to dismiss, in reaching this conclusion. It is abundantly clear that the Court may not consider matters outside of the complaint in ruling on a motion pursuant to Fed.R.Civ.P. 12(b)(6). *Festa, supra,* 905 F.2d at 37. To the extent the Court considers such materials, " 'the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....' " *Festa, supra,* 905 F.2d at 37–38 (quoting Fed.R.Civ.P. 12(b)). In the case at bar, the Court will not consider matters outside the complaint, and thus declines to convert the present motion in to a motion for summary judgment.

Likewise, the Court will not consider the numerous factual allegations set forth for the first time in Telsat's memorandum opposing the motion. *See, e.g.,* Memorandum of Law in Opposition to ESPN's Motion to Dismiss the Complaint ("Opposing Memorandum") at 2–10. It is a basic principle that a complaint may not be amended by the plaintiff's brief filed in opposition to a motion to dismiss. *See Hartford Fire Insurance Co. v. Federated Department Stores, Inc.,* 723 F.Supp. 976, 987 (S.D.N.Y.1989); *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989).

and expansion in this market, to maintain ESPN's monopoly power in this market and to prevent the market from becoming competitive." Complaint ¶ 22. Moreover, the Second Circuit has held that "[p]roof of the first element of an attempted monopolization claim, anticompetitive or exclusionary conduct, may be used to infer the second element, specific intent to monopolize; ..." *Volvo, supra,* 857 F.2d at 74. Finally, as to the third element, a showing of a dangerous probability of success, the Second Circuit has stated that "when coupled with proof of monopoly power, evidence of anticompetitive conduct may demonstrate" such a probability of success. *Volvo, supra,* 857 F.2d at 74; *see also International Distribution Centers, Inc. v. Walsh Trucking Co., Inc.,* 812 F.2d 786, 791 (2d Cir.), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). The Court has found, *supra,* a sufficient allegation of ESPN's monopoly power. Complaint ¶ 13. This allegation, when coupled with Telsat's allegation that ESPN has engaged in anticompetitive conduct, Complaint ¶ 20, permits the inference of a dangerous probability of success. *Volvo, supra,* 857 F.2d at 74 ("since the complaint alleges both exclusionary conduct *and* the existence of monopoly power, the third element, a dangerous probability of success, may be inferred.") (emphasis in original). ESPN's motion to dismiss the third claim, attempted monopolization, must therefore be denied.

*Fourth Claim: Monopolization of Certain Local Markets*

The fourth claim asserted by Telsat avers that

[t]he conduct of ESPN constitutes monopolization of certain local markets for cable television in the United States ... and an abuse and misuse of monopoly power in those markets to gain a competitve [sic] advantage and restrain trade unreasonably in the market for subscription television programming services in the United States.... ESPN possesses monopoly power in certain of the local markets for cable television systems, and has willfully obtained and maintained and exercised monopoly power, and has further used, abused and minused [sic] monopoly power in certain of the local markets for cable television to obtain a competitive advantage, restrain trade, and monopolize, conspire to monopolize, and attempt to monopolize the market for subscription television programming services in the United States.

Complaint ¶¶ 55, 56.

ESPN argues that this claim must be dismissed, as it is unclear from the face of the complaint which local markets ESPN is alleged to have monopolized. Memorandum of Law in Support of ESPN's Motion to Dismiss the Complaint at 26. Telsat responds in its memorandum opposing the instant motion, that "[t]he local market affected by ESPN monopoly power is alleged as Telsat's market at paragraphs 28 and 30" of the complaint. Opposing Memorandum at 33. Paragraph 28 of the complaint avers that "ESPN has abused and misused its monopoly power in the local cable television market in which ESPN operates so as to exclude, unreasonably and unjustifiably, Telsat, the key competitor of the local [cable] operator in the Telsat market." Complaint ¶ 28. ESPN, however, allegedly operates nationwide, Complaint ¶ 21, and thus the phrase "the local cable television market in which ESPN operates," Complaint ¶ 28, is meaningless. The term "the Telsat market," Complaint ¶ 28, is likewise unenlightening with respect to this issue, as Telsat's market is the MMDS market, Complaint ¶ 5, not the local cable market.

Paragraph 30 of the complaint is similarly insufficient to save Telsat's *fourth claim.* That paragraph alleges that "ESPN has refused to offer its subscription services to Telsat on a competitive basis in the affected local markets." Complaint ¶ 30. Again, there is no hint from which ESPN, or the Court, may glean which markets Telsat is referring to in its fourth claim. The phrase "the affected local markets" is conclusory to the point of being tautological. Without more, the fourth claim fails to provide the required " 'short and plain statement of the claim' that will give the defendant fair notice of

what plaintiff's claim is and the ground upon which it rests." *Conley, supra,* 355 U.S. at 47, 78 S.Ct. at 103 (quoting Fed.R. Civ.P. 8(a)). ESPN's motion to dismiss the fourth claim is, therefore, granted.

*Fifth Claim: Unreasonable Restraint of Trade*

Claim five alleges that ESPN has contracted, combined or conspired in an unreasonable restraint of trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1.[5] Complaint ¶ 59. More specifically, Telsat claims that ESPN's refusal to "promote" Telsat has "unreasonably restrained trade in the market for subscription television programming services in the United States." Complaint ¶ 59.

 To state a claim under § 1 of the Sherman Act, Telsat must allege that (1) ESPN entered into a contract, combination or conspiracy, and (2) the conspiracy was "in restraint of trade or commerce among the several States." 15 U.S.C. § 1; *see also Walsh Trucking, supra,* 812 F.2d at 793; *Frito–Lay, Inc. v. Bachman Co.,* 659 F.Supp. 1129, 1133 (S.D.N.Y.1986). Moreover, as it must with respect to its conspiracy to monopolize claim under § 2 of the Sherman Act, Telsat must do more than merely allege that a conspiracy exists, it must provide some factual basis for that allegation. *See Garshman, supra,* 824 F.2d at 230 ("The allegation of unspecified contracts with unnamed other entities to achieve unidentified anticompetitive effects does not meet the minimum standards for pleading a conspiracy in violation of the Sherman Act."); *Heart Disease Research Foundation, supra,* 463 F.2d at 100 ("a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal."); *North Jersey Secretarial School, Inc. v. McKiernan,* 713 F.Supp. 577, 584 (S.D.N.Y. 1989) (dismissing § 1 claim, holding that "[e]ven notice pleading requires that facts be pleaded to support a conspiracy claim.");

*International Television Productions Ltd v. Twentieth Century–Fox Television Division of Twentieth Century–Fox Film Corp.,* 622 F.Supp. 1532, 1537 (S.D.N.Y. 1985) (in asserting a § 1 claim, "[t]he complaint must identify the co-conspirators, and described the nature and effects of the alleged conspiracy."). This Telsat has failed to do. ESPN's motion to dismiss the fifth claim is, therefore, granted.

*Sixth and Seventh Claims: State Law Claims*

ESPN has also moved for dismissal of Telsat's pendent state law claims, should the federal claims be dismissed, on the ground of lack of jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Riegel Textile Corp. v. Celanese Corp.,* 649 F.2d 894, 906 (2d Cir.1981). However, the Court has denied ESPN's motion to dismiss with respect to Telsat's first and third claims, and thus a basis for federal jurisdiction remains under the Sherman Act. Telsat's pendent claims, therefore, should not be dismissed for lack of a federal claim on which to hang. *Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. at 1138. ESPN's motion to dismiss the sixth and seventh claims is denied.

### CONCLUSION

For the reasons set forth above, ESPN's motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), is granted in part and denied in part. Specifically, the motion to dismiss is granted with respect to Telsat's second, fourth and fifth claims, and is denied with respect to Telsat's first, third, sixth and seventh claims. Leave to replead is granted.

SO ORDERED.

---

**5.** Section 1 of the Sherman Act reads, in relevant part, as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony...." 15 U.S.C. § 1.