**AD/SAT, A DIVISION OF SKYLIGHT, INC., Plaintiff,**

**v.**

**ASSOCIATED PRESS, Newspaper, Association of America, National Newspaper Network, The Newark Star–Ledger, The Birmingham News Company, The Oakland Press Co., the News & Observer Publishing Company, Oklahoma Publishing Company, The Lexington Herald–Leader, Dayton Newspapers, Inc., Cox Enterprises, Inc., Baltimore Sun, Co., Inc., and Advance Publications, Inc., Defendants.**

**No. 94 Civ. 6655 (PKL).**

United States District Court, S.D. New York.

April 24, 1995.

Shulman, Gainsley & Walcott, P.A., Minneapolis, MN (Daniel R. Shulman, Phillip Gainsley and Terry M. Walcott, of counsel), Law Firm of Joseph M. Alioto, San Francisco, CA (Joseph M. Alioto, of counsel), Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City (David E. Nachman, of counsel), for plaintiff.

Hughes Hubbard & Reed, New York City (James B. Kobak, Jr., of counsel), Hughes Hubbard & Reed, Washington, DC (Robert P. Reznick, of counsel), for defendant Lexington Herald–Leader.

### OPINION AND ORDER

LEISURE, District Judge:

This is an action brought by AD/SAT, a division of Skylight, Inc. ("AD/SAT") against the Associated Press ("AP"), the Newspaper Association of America ("NAA"), the National Newspaper Network ("NNN"), and a number of individual newspapers, including The Lexington Herald–Leader (the "Herald–Leader" or "defendant"). AD/SAT asserts that defendants have conspired to monopolize the alleged market of transmitting advertising copy and graphics to newspapers, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (1982) ("Sherman Act § 2"), and that they have conspired together to boycott plaintiff, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1982) ("Sherman Act § 1").

Defendant now moves this Court for judgment on the pleadings, pursuant to Fed. R.Civ.P. 12(c). Alternatively, defendant moves for summary judgment, pursuant to Fed.R.Civ.P. 56. For the reasons stated below, defendant's motions are each granted in part.

## BACKGROUND

AD/SAT has been engaged in the satellite and electronic delivery of newspaper advertising since 1987. Electronic delivery of newspaper advertising involves the transmission of copy from advertisers to newspapers via satellite as well as by other electronic means of delivery. During 1993, AD/SAT delivered advertisements worth approximately $400 million in advertising revenue for the newspapers served. Advertisers pay AD/SAT a transmission fee based on volume, and newspapers pay a fee for the equipment necessary to receive the electronic advertisements and for each advertisement received.

AP is a cooperative association engaged in the collection, assembly and distribution to newspapers of news and photographs. AP also provides satellite uplink and downlink services used to transmit data to its member newspapers. Prior to the events giving rise to the instant action, plaintiff had paid AP, for a number of years, to use AP's satellite network for the transmission of advertising to AP member newspapers.

NNN is an unincorporated subdivision of NAA, a trade association of newspapers, and is a joint venture among NAA members to offer advertising packages to advertisers. Herald–Leader, along with the other newspaper defendants, are newspapers that have stopped or have tried to stop doing business with AD/SAT.

The Herald–Leader is a general-interest broadsheet newspaper published seven days a week in Lexington, Kentucky. *See* Memorandum of Law in Support of Motion of Defendant Lexington Herald–Leader for Judgment on the Pleadings or for Summary Judgment ("Defendant Mem.") at 4. A portion of Herald–Leader's advertisers are national or regional companies located outside of the Lexington area, and some of these advertisers have available to them as a means of delivering their advertisements to the Herald–Leader the AD/SAT network. *Id.* at 5. The Herald–Leader started doing business with AD/SAT in 1987, at which time the two entered into a five-year contract. *Id.* at 6. The AD/SAT network is only one

## 514

method, among many, available to the Herald–Leader's advertisers, and apparently it has been utilized by only a few of them.[1] *Id.*

The AdSEND program is a program through which AP has entered the electronic newspaper advertising transmission business. AP's service enables advertisers to transmit advertising copy to United States newspapers in a digital, computer-usable format, and it competes directly with AD/SAT.

Plaintiff appeared before this Court on September 14, 1994 seeking a temporary restraining order preventing AP from initiating its AdSEND program. The Court neither granted nor denied the TRO, and the parties next appeared before this Court on September 23, 1994, at which time plaintiff's application for a preliminary injunction barring AP and those in active concert with it from initiating, providing, supplying, engaging in, contributing to or participating in the AdSEND program was denied.

### DISCUSSION

#### I. *Judgment on the Pleadings*

#### A. *Standard*

■ Federal Rule of Civil Procedure 12(c) provides for judgment on the pleadings. "In deciding a Rule 12(c) motion, [the Court] appl[ies] the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994). Therefore, in reviewing a motion for a judgment on the pleadings, a court must assume the facts alleged by the plaintiff to be true and must liberally construe them in the light most favorable to the plaintiff. *See Easton v. Sundram,* 947 F.2d 1011, 1014 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). A motion to dismiss on the pleadings may be granted only if it appears certain that no relief could be granted under any set of facts that could be proved consistent with the allegations. *See Hishon v. King & Spalding,*

467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). "[T]he court should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). "[T]he court's task on a Rule 12(b)(6) motion is not to rule on the merits of plaintiffs' claims, but to decide whether, presuming all factual allegations of the complaint to be true, and drawing all reasonable inferences in the plaintiff's favor, the plaintiff could prove any set of facts which would entitle him to relief." *Weiss v. Wittcoff,* 966 F.2d 109, 112 (2d Cir. 1992) (citations omitted).

■ The Federal Rules of Civil Procedure mandate that a complaint must only satisfy the minimum requirements of "notice pleading." *See Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957); *Anderson v. Coughlin,* 700 F.2d 37, 43 (2d Cir.1983); *Wade v. Johnson Controls, Inc.,* 693 F.2d 19, 21 (2d Cir.1982). Moreover, "dismissals on the pleadings are especially disfavored in antitrust cases." *Schwartz v. Jamesway Corp.,* 660 F.Supp. 138, 141 (E.D.N.Y.1987).[2] This Court finds that plaintiff has met the minimum notice requirements dictated by the Rules as regards its Sherman Act § 1 claim but not its Sherman Act § 2 claim.

#### B. *The Amended Complaint*

As an initial matter, the Herald–Leader notes that AD/SAT's First Amended Complaint (the "Complaint") lists the Herald–Leader as a defendant in the caption, but that other then the caption, the Herald–Leader's name nowhere appears. Outside the caption, the Herald–Leader is never mentioned by name, and the Complaint does not even identify the Herald–Leader as one

---

**1.** From January 1, 1994 to August 16, 1994, when the Herald–Leader alleges that it gave official notification of the discontinuance of its Ad/SAT contract, only fifty-three advertisements were delivered over the Ad/SAT system. Defendant Mem. at 5. The Herald–Leader was billed a

$7,500 annual affiliation fee and a per-ad charge of $20. *Id.*

**2.** But note that the court nevertheless dismissed the antitrust claim in *Schwartz* for failure to state a claim.

of the parties in its introductory paragraphs. Defendant contends that such an omission constitutes a failure to provide a factual basis to require a party to participate in a lawsuit and requires dismissal. Defendant observes that this Court has repeatedly held that, where a complaint alleges no specific act or conduct on the part of the defendant, and the complaint is silent as to the defendant except for the appearance of its name in the caption, the complaint against that defendant must be dismissed. *See, e.g., Thomas v. Beth Israel Hosp., Inc.,* 710 F.Supp. 935, 942 (S.D.N.Y. 1989) (Sweet, J.); *Kirkland v. Bianco,* 595 F.Supp. 797, 799 (S.D.N.Y.1984) (Lasker, J.); *Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981) (Ward, J.).

■ This Court notes that while it is true that the Herald–Leader is identified by name only in the caption of the Complaint, it is identified as a defendant, and the Complaint sets out numerous acts by the "defendants," "defendant newspapers," and "newspaper defendants" in furtherance of the alleged conspiracy. Consequently, this Court finds that on the facts of the instant action, the Complaint should not be dismissed summarily as to the Herald–Leader solely on the grounds that it is not specifically named outside of the caption. The Court must determine whether, viewing the claims alleged against "defendants," "newspaper defendants," and "defendant newspapers" as specifically alleging claims against defendant Herald–Leader, plaintiff has satisfied the requirements of notice pleading.[3]

### C. *Sherman Act § 1*

■ In order to recover under Sherman Act § 1, AD/SAT must plead and establish that defendants (1) entered into a contract, combination or conspiracy, which was (2) an unreasonable restraint of trade or commerce,

and (3) that injury to competition resulted from the unreasonable restraint. The Complaint states:

> The conduct of defendants hereinabove constitutes a per se unlawful group boycott and concerted refusal to deal with AD/SAT, and is further a contract, combination, and conspiracy unreasonably to restrain trade and commerce in the market for transmission of newspaper advertising, and in the submarket thereof for the electronic transmission of newspaper advertising, by reason of which violation AD/SAT has been injured in its business and property.

Amended Complaint ¶ 33.

> (c) In order to further the establishment and entrenchment of its AP AdSEND program, Associated Press has entered into a contract, combination and conspiracy with its member newspapers, including at least the other defendant newspapers named herein, the NAA, and the NNN to discontinue using independent suppliers of advertising transmissions and to designate Associated Press as the exclusive provider of these services.... [T]he chairman of the NAA ... states that the members of the NAA should 'work with the Associated Press and help our cooperative perfect its ability to transmit ads digitally from the advertisers' computer to our computer' ... [The Chairman] also exhorted the NAA member newspapers to work 'collectively' with the Associated Press on its electronic advertising transmission service. These statements constitute an invitation to enter into a group boycott or collective refusal to deal, targeted directly at AD/SAT.

> (e) The mere announcement of the entry of Associated Press into the advertising transmission market has already had an

---

**3.** The Court notes that plaintiff asserts that its failure even to include a paragraph describing the Herald–Leader in that portion of the Complaint describing the corporate structures of the other newspaper defendants and identifying them as Ad/SAT customers was inadvertent. Ad/SAT has further indicated an intention to move to amend the Complaint to include such a paragraph. This Court finds that Ad/SAT's omission is not fatal to its action against the Herald–Leader and further notes that "[a] motion to

amend should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Firemen's Insurance Company v. Onwualia,* 1994 WL 706994 (S.D.N.Y. December 19, 1994) (Leisure, J.) (quoting *Chartier v. Matthews Associates,* 1994 WL 582938 at *1–3 (S.D.N.Y. October 20, 1994) (Leisure, J.) (quoting *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987))).

adverse impact on competition, including directly adverse effects on AD/SAT. A number of newspapers, including the newspaper defendants named herein, have either refused to consider proposals from AD/SAT because they are awaiting further information on the new Associated Press AdSEND program; have cancelled contracts with AD/SAT; have announced that they intend to cancel contracts with AD/SAT; or have failed and refused to pay AD/SAT for services in breach of existing contracts. This constitutes a concerted refusal to deal or group boycott.

Amended Complaint ¶ 29.

■ Having determined that allegations with respect to "defendants," "newspaper defendants," and "defendant newspapers" constitute claims against the Herald–Leader, this Court finds that the Complaint alleges each element of a Sherman Act § 1 claim against the Herald–Leader. Plaintiff does more than merely allege that a conspiracy exists, it provides a basis for that allegation. *See Telsat v. Entertainment & Sports Programming Network*, 753 F.Supp. 109, 115 (S.D.N.Y.1990) (Leisure, J.); *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F.Supp. 832, 837 (S.D.N.Y.1988) (Leisure, J.). Plaintiff asserts that there was an invitation to conspire and that the various newspaper defendants accepted the invitation by (1) canceling their contracts with AD/SAT, (2) announcing they would cancel their contracts, (3) refusing to consider proposals from AD/SAT, or (4) refusing to pay AD/SAT. *See* Complaint ¶ 29(c), (e).[4] Plaintiff also asserts that the conspiracy was in restraint of trade in the purported market for transmission of newspaper advertising and the purported submarket for the electronic transmission of newspaper advertising. *See* Complaint ¶¶ 28, 33. Lastly, AD/SAT alleges that the conspir-

acy resulted in harm to competition. *Id.* at ¶¶ 29(c), 31, 32, 33.[5]

Accordingly, this Court finds that AD/SAT has adequately pleaded a claim pursuant to Sherman Act § 1, and the Herald–Leader's motion for judgment on the pleadings must be denied as to AD/SAT's § 1 claim.

### D. *Sherman Act § 2*

■ In order to recover on a conspiracy to monopolize claim under Sherman Act § 2, AD/SAT must plead and establish (1) that defendants engaged in concerted action with the specific intent of achieving a monopoly, and (2) the commission of at least one overt act in furtherance of the conspiracy. The Court finds that the language from the same sections of the Complaint cited in the immediately preceding section also allege each element of a Sherman Act § 2 claim against the Herald–Leader except for the necessary element of a specific intent to monopolize. *See* Complaint ¶¶ 28, 29(c), 29(e), 32. Plaintiff alleges a specific intent to monopolize on the part of AP, but not on the part of the Herald–Leader or the other newspaper defendants. *See* Complaint ¶ 33. Furthermore, plaintiff has failed to allege conduct from which the Court could infer such intent. Even the Herald–Leader's purported effort to see AdSEND succeed at AD/SAT's expense does not give rise to an inference of a specific intent to monopolize. There are no facts pleaded from which this Court can infer that the Herald–Leader desired AP to achieve a monopoly.

Accordingly, this Court finds that AD/SAT has inadequately pleaded a claim pursuant to Sherman Act § 2, and the Herald–Leader's motion for judgment on the pleadings must be granted as to AD/SAT's § 2 claim. *See Deem v. Lockheed Corp.*, 749 F.Supp. 1230, 1237 (S.D.N.Y.1989).

---

**4.** The Herald–Leader presents strong evidence that any action taken by it was an independent action in its own self-interest. Such evidence needs to be considered when this Court reaches defendant's motion for summary judgment, but the Herald–Leader can not use such evidence to prevail on a motion for judgment on the pleadings. This Court cannot weigh the evidence presented by the opposing sides on such a motion, rather it merely ascertains whether plaintiff has

alleged the elements of a conspiracy and facts sufficient to provide more than an insubstantial basis for the allegations.

**5.** Ad/SAT also alleges that there was a group boycott and a contract and combination in restraint of trade, in addition to a conspiracy. *See* Complaint ¶¶ 29(c), 33.

## II. *Summary Judgment*

### A. *The Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Thornton v. Syracuse Sav. Bank,* 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552); *accord Irvin Indus., Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 245 (2d Cir.1992).

"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Id.; accord Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991); *see also Lang,* 949 F.2d at 580 ("In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party."); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991) ("Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and

entry of summary judgment is appropriate.").

■ The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.,* 477 U.S. at 249, 106 S.Ct. at 2511.

■ The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once a motion for summary judgment properly is made, however, the burden then shifts to the nonmoving party, which "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)); *accord Brass v. American Film Technologies, Inc.,* 987 F.2d 142 (2d Cir.1993). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat

the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations and quotation omitted); *see also Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir.1992) (the court must "consider the record in the light most favorable to the non-movant. However, the non-movant may not rest upon the mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (quotation and citations omitted). The Court draws all reasonable inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987).

**B. *Sherman Act § 1***

The Herald–Leader contends that AD/SAT has failed to allege anything other than the exercise of independent business judgment in a manner favorable to the Herald–Leader's interests but unfavorable to AD/SAT's. The Herald–Leader maintains that AD/SAT has adduced no evidence demonstrating that defendant acted, at any time, in a manner inconsistent with its normal self-interest.[6] In fact, asserts the Herald–Leader, its decision to terminate its agreement with AD/SAT predated by at least seven months AP's announcement of its decision to enter the electronic advertisement transmission business, which is the date upon which plaintiff alleges the conspiracy began. The Herald–Leader contends that the facts demonstrate only independent unilateral action taken by it in its own self-interest and therefore warrant a grant of summary judgment.

**1. *Timing of Motion***

 Preliminarily, plaintiff protests that it has not yet been afforded adequate opportunity to complete discovery and to develop evidence from defendants of the alleged conspiracy. AD/SAT observes that only 10 of 56 depositions had been conducted at the time

of the filing of the instant motion. AD/SAT urges this Court to find that defendant's motion is premature.

This Court will not defer its ruling on the instant motion to allow plaintiff more time for discovery. Plaintiff was made aware of the possibility of such a motion by the December 20, 1994 Consent Order on Discovery and Motion Schedule. Plaintiff has not, at any point prior to answering the motion, objected to the filing of such a motion. Moreover, AD/SAT had a number of months after the denial of its motion for a preliminary injunction to perform discovery before the instant motion needed to be addressed. In fact, discovery was taken specifically in conjunction with the instant motion, and neither party voiced to the Court a need for additional discovery. Consequently, plaintiff can claim neither prejudice nor unfairness at this Court's decision to go forward with the instant motion. The Court notes that additional discovery has been taken and continues to be taken with respect to AP and the other newspaper defendants, and leave to replead will be granted if additional information comes to light that demonstrates that AD/SAT does in fact have a viable cause of action against the Herald–Leader.

**2. *Timing of Termination***

AD/SAT next contends that the record reflects that neither the Herald–Leader's decision to terminate nor its actual termination of its network affiliation agreement with AD/SAT predated the alleged conspiracy, and that the Herald–Leader terminated AD/SAT in furtherance of a conspiracy to boycott AD/SAT and to monopolize the relevant markets. AD/SAT asserts that negotiations over the renewal of the Herald–Leader's affiliation agreement continued through April 1994, and that through that time, both a renewal of the agreement was negotiated and so was the installation of a new digital advertisement reception system. *See* AD/SAT's Memorandum of Law in Opposition to Motion of Defendant Lexington Herald–Leader for Judgment on the Pleadings or for Summary Judg-

---

**6.** The Herald–Leader provides substantial evidence showing numerous financial reasons for the discontinuance of its relationship with Ad/

SAT, and describes how economic realities dictated a troubled history between the two companies.

ment ("Plaintiff Mem.") at 14. AD/SAT asserts that as late as April 20, 1994, a representative of the Herald–Leader was negotiating the terms of the renewal agreement without giving the slightest indication that the Herald–Leader had decided to terminate or not to renew its affiliate relationship with AD/SAT.

On April 25, 1994, AP publicly announced, at a meeting allegedly attended by representatives of the Herald–Leader, that it intended to enter the business of electronic transmission of advertising to newspapers. On May 19, 1994, the assistant display advertising manager of the Herald–Leader sent a memorandum to the display advertising manager suggesting the termination of the Herald–Leader's contract with AD/SAT. Plaintiff Mem. at 17. On June 10, 1994, a representative of the Herald–Leader informed AD/SAT that the Herald–Leader would not sign the proposed affiliation agreement, and on August 18, 1994, AD/SAT received a letter stating that the Herald–Leader was officially terminating its network affiliation agreement.

■ This Court finds that the timing of the Herald–Leader's decision to discontinue its affiliation with AD/SAT is a question of fact. AD/SAT has more than sufficiently adduced evidence that precludes this Court from determining, on a motion for summary judgment, that the Herald–Leader's decision predates the alleged invitation to conspire.

### 3. *Summary Judgement on Sherman Act § 1 Claim*

Defendant argues that summary judgment for defendants in antitrust cases is appropriate where the plaintiff has failed to present some evidence that tends to exclude the possibility that defendants were acting independently. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct.

1348, 1356–57, 89 L.Ed.2d 538 (1986); *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1470–71, 79 L.Ed.2d 775 (1984); *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987). "[E]vidence of parallel conduct alone cannot suffice to prove an antitrust conspiracy. A plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the [defendants] had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Apex Oil*, 822 F.2d at 252 (citations omitted). In addition to defendants' parallel acts, plaintiff must adduce evidence of "plus" factors, such as a common motive to conspire or a high level of interfirm communications.[7]

Plaintiff, in turn, citing *Community Elec. Serv. of Los Angeles, Inc. v. National Elec. Contractors Ass'n, Inc.*, 869 F.2d 1235, 1246 (9th Cir.1989), a Ninth Circuit case, contends that special rules apply to proof of conspiracy and to motions for summary judgment in antitrust cases. Plaintiff urges this Court to afford wide latitude in concluding conspiracy from parallel conduct and the inferences drawn from the circumstances, and notes that a conspiracy need not be shown by direct evidence or through proof of an express or written agreement.

Although there is a material question of fact concerning when the Herald–Leader's decision to terminate AD/SAT's services was made, AD/SAT nowhere alleges or adduces evidence in support of the proposition that the Herald–Leader ever agreed with any other newspaper or with AP on any course of conduct with respect to AD/SAT. In addition, AD/SAT has offered no evidence that suggests that the Herald–Leader was not acting independently when it reached its decision. The Herald–Leader indicates the economic compulsions that constrained it to suspend its association with AD/SAT.[8] It

7. "At a minimum ... the circumstances [must be] such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Apex Oil*, 822 F.2d at 252 (citations omitted).

8. The Herald–Leader emphasizes the financial drawbacks to its continued association with Ad/

SAT and the troubled history of their relationship together. Ad/SAT offers no evidence tending to demonstrate that a discontinuation of the affiliation was not in the Herald–Leader's interest. In fact, Ad/SAT, both in the instant motion and in papers filed in conjunction with other matters in the instant litigation, has consistently highlighted the economic incentive all of the newspapers had

further observes that it would be adverse to its own interests to eliminate a competing supplier of the services upon which it relies.[9] AD/SAT offers no evidence that tends to disprove the Herald–Leader's assertions of independent self-interested action. Instead, AD/SAT relies exclusively on evidence of an invitation to conspire closely followed by parallel conduct.

AD/SAT's only evidence that tends to support its theory that the Herald–Leader was conspiring to seek to facilitate the achievement of a monopoly by AP, rather than simply pursuing the independent and entirely legitimate goal of utilizing the most economical supplier of a service, is the purported benefit that the Herald–Leader, along with the other newspapers, would receive from the lower dues that they would allegedly be charged if AP achieved a monopoly. AD/SAT hypothesizes that AP will pass on its "monopoly profits" to its members. The Court presumes that this theory relies on the fact that the "monopoly profits" will be generated entirely at the expense of advertisers, rather than the supposed newspaper beneficiaries.[10]

■ AD/SAT offers no evidence, however, that tends to show that the Herald–Leader's dues would be reduced or that the Herald–Leader believed that it would benefit, in any way, from an AP monopoly of the purported market in electronic advertisement transmission to newspapers. AD/SAT offers evidence that, at best, shows an invitation to conspire and parallel conduct. This evidence is insufficient to even tend to disprove the evidence adduced by the Herald–Leader which strongly supports its position that it acted independently and in its self-interest.

■ Moreover, even if all defendants individually possessed the motivation plaintiff conjectures, it is not sufficient to show conspiracy. "[The Court does] not believe that the various motives each individual defendant may or may not have had to be rid of [plaintiff] gives rise to an inference that the defendants *conspired* to boycott [plaintiff] in violation of the antitrust laws." *Caldwell v. American Basketball Ass'n,* 825 F.Supp. 558, 572 (S.D.N.Y.1993) (emphasis in original).

The Court need only briefly note its skepticism, more thoroughly articulated in its decision denying plaintiff's motion for a preliminary injunction, that AP could ever monopolize the relevant market. Plaintiff's conspiracy theory becomes yet more strained if AP is powerless to effect a monopoly, and consequently necessarily unable to advantage its members through the distribution of monopoly profits. As the Supreme Court has stated, "[i]f the plaintiff's theory is economically senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 468–69, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992). *See also Apex Oil,* 822 F.2d at 253 ("a conspiracy must be proved by strong direct or strong circumstantial evidence, and the implausibility of a scheme will reduce the range of inferences that may permissibly be drawn from ambiguous evidence."); *Eskofot A/S v. E.I. Du Pont de Nemours & Co.,* 872 F.Supp. 81, 92–93 (S.D.N.Y.1995) (Leisure, J.). *Eskofot* states, "the rule that *Monsanto* purports to establish is one that prevents independent action from being subject to section one of the Sherman Act. In other words, under *Monsanto,* it is not enough that defendant

---

in taking advantage of the new service offered by AP. For example, Ad/SAT has asserted that AP would be offering the newspapers free computers and equipment, a more technologically advanced service, and a lower rate.

The Court must be wary about finding a conspiracy in exactly such a situation lest it inadvertently stifle the advent of a more efficient competitor on evidence no more substantial than the fact that consumers have flocked to it.

9. The Court notes that the instant motion does not involve competitors colluding to eliminate another competitor. Rather, Ad/SAT alleges that

the Herald–Leader conspired to eradicate one of its own suppliers. Ad/SAT's claim is that the Herald–Leader sought to cut off one of its own possible sources of advertisement transmission to bestow upon another such source a monopoly in that market.

10. The Court notes that if some newspapers are hypothesized to be net beneficiaries from an AP monopoly and others are expected to be net losers, Ad/SAT has provided no evidence that shows that the Herald–Leader would be one of those that gains.

and others acted in a way that restrained trade, if they acted independently of one another. Thus, to prevail on a conspiracy claim under section one, a plaintiff must demonstrate that there was a 'conscious commitment to a common scheme.' *Monsanto* [465 U.S.] at 764 [104 S.Ct. at 1470–71]." *Id.*

AD/SAT argues that all it need prove is that the Herald–Leader was in some way part of a common undertaking or joint enterprise. AD/SAT cites *Interstate Circuit, Inc. v. United States,* 306 U.S. 208, 226–27, 59 S.Ct. 467, 474–75, 83 L.Ed. 610 (1939) for the proposition that when: (1) alleged conspirators receive an invitation to enter into an anti-competitive arrangement, (2) each knows that the other has received the same invitation, and (3) each then acts in a manner consistent with its acceptance, it is sufficient to establish an unlawful conspiracy. AD/SAT argues that *Interstate* informs the instant action because the two situations are directly analogous. In support of such an analogy, AD/SAT argues that, in the instant action, each of the defendants received the same invitation to enter into an unlawful arrangement, each knew that all received the same invitation, and each defendant acted in a manner consistent with the invitation.

*Interstate,* a horizontal price-fixing case, however, is inapposite. There is no allegation in the instant action that the Herald–Leader would benefit only if collective action is taken. It is not the case here that the conduct of defendant newspapers only makes sense if they expected cooperative action. Plaintiff itself has emphasized that the prices charged by AP were lower and the services offered better than those available from AD/SAT. Consequently, the Herald–Leader's decision to switch from AD/SAT to Ad-SEND, when analyzed individually, is logical. In *Interstate,* however, the situation was such that rational defendants would not have acted in the manner in which defendants did, in fact, act, if there had not been mutual assurances of common action.

11. One which would be considerably less expensive to the newspaper than the AD/SAT system.

12. This Court notes that the Second Circuit has "overturned jury verdicts where, taken as a

The Supreme Court has ruled that "conduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 597 n. 21, 106 S.Ct. at 1362 n. 21. On the present record, the Herald–Leader's conduct is *more* consistent with the individual pursuit of competitive advantage than it is with a collusive endeavor for monopolistic profit. AD/SAT presents no facts that refute the Herald–Leader's showing that its actions constituted the exercise of unilateral business judgment. As the Second Circuit has stated, "[a]n antitrust plaintiff may not ... in opposing a motion for summary judgment, rest on conclusory assertions of conspiracy when the defendants have proffered substantial evidence supporting a plausible and legitimate explanation of their conduct." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 923 (2d Cir.1985).

4. *Conclusion*

AD/SAT's theories and allegations, while sufficient to survive a motion to dismiss, are inadequate to defeat the instant motion for summary judgment. Plaintiff has not presented facts which tend to exclude the possibility that defendant was acting independently in the pursuit of its own self-interest. Plaintiff merely articulates a theory that postulates a potential benefit to the Herald–Leader from an AP monopoly. Viewing all inferences from the materials submitted to this Court in the light most favorable to plaintiff, as this Court must on this motion for summary judgment, defendant may have terminated its relationship with AD/SAT after an invitation to conspire was transmitted, but there is no evidence that Herald–Leader's action was motivated by anything other than independent self-interest. In other words, based on the present record, AD/SAT, at best, can show that the Herald–Leader heard that AP was planning to introduce a new electronic delivery service,[11] and decided, as a consequence, to terminate its affiliation with AD/SAT.[12]

whole, the evidence point[ed] with at least as much force toward unilateral action [by the de-

In sum, AD/SAT has produced no evidence, either direct or circumstantial, that reasonably tends to prove that the Herald–Leader and others had a conscious commitment to a common scheme designed to achieve an unlawful objective. *See Monsanto,* 465 U.S. at 768, 104 S.Ct. at 1472–73. Accordingly, defendant's motion for summary judgment on plaintiff's Sherman Act § 1 claim should be granted.

### C. *Sherman Act § 2*

Having found that AD/SAT's Sherman Act § 2 claim should be dismissed based on the pleadings, this Court need not reach the Sherman Act § 2 claim on defendant's summary judgment motion. AD/SAT has failed to plead that the Herald–Leader had a specific intent to monopolize, and has also failed to adduce any evidence tending to show that the Herald–Leader had a specific intent to monopolize. This Court, however, simply notes that for the same reasons plaintiff failed adequately to plead conspiracy under Sherman Act § 1, it has similarly failed to do so under Sherman Act § 2.[13]

Accordingly, this Court, had it been required to reach the Sherman Act § 2 issue on defendant's motion for summary judgment, would have granted defendant's motion for summary judgment as to this issue as well.

### CONCLUSION

For the reasons stated above, defendant's motion for judgment on the pleadings is granted as to plaintiff's Sherman Act § 2 claim, and defendant's motion for summary judgment is granted as to plaintiff's Sherman Act § 1 claim. Accordingly, AD/SAT's action against defendant Herald–Leader is dismissed in its entirety.

**SO ORDERED.**

fendants] as toward conspiracy, and a jury would have to engage in impermissible speculation to reach the latter conclusion." *H.L. Hayden Co. v. Siemens Medical Systems., Inc.,* 879 F.2d 1005, 1014 (2d Cir.1989) (footnote and citations omitted).

**13.** As discussed at greater length earlier in this Opinion, plaintiff has failed to offer evidence which would enable a reasonable jury to find concerted action between the Herald–Leader and any of the other defendants.