**INVAMED, INC., Plaintiff,**

v.

**BARR LABORATORIES, INC., Brantford Chemicals Inc., Bernard C. Sherman, Apotex Holdings, Inc., Apotex, Inc., and Sherman Delaware, Inc., Defendants.**

**No. 98 Civ. 0861(RWS).**

United States District Court, S.D. New York.

Oct. 1, 1998.

The Law Office of Frederick R. Dettmer by Frederick R. Dettmer, New York City, for plaintiff.

Lord, Bissell & Brook by Hugh L. Moore, Chicago, IL, Lord, Bissell & Brook by Angelo G. Savino, New York City, for defendants Bernard C. Sherman, Apotex Holdings Inc., Apotex Inc., and Sherman Delaware Inc.

## OPINION

SWEET, District Judge.

Defendants Bernard C. Sherman ("Sherman"), Apotex Holdings Inc. ("Holdings"), Apotex Inc. ("Apotex"), and Sherman Delaware, Inc. ("Sherman Delaware") (collectively, the "Affiliates") have moved for partial dismissal of the complaint pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Specifically, the Affiliates have moved to dismiss the following claims against them: (1) monopolization, attempt to monopolize, and conspiracy to monopolize, in violation of section 2 of the Sherman Act, 15 U.S.C. § 2 (First, Second, and Third Causes of Action, respectively), (2) conspiracy in restraint of trade, in violation of section 1 of the Sherman Act, 15 U.S.C. § 1 (Fourth Cause of Action), (3) tortious interference with contract (Eighth Cause of Action), and (4) tortious interference with business relationships (Ninth Cause of Action).

For the reasons set forth below, the Affiliates' motion will be granted with leave to replead.

### Parties

Plaintiff Invamed, Inc. ("Invamed") is a New Jersey·corporation with its principal place of business in Dayton, New Jersey.

214

Invamed is engaged in the business of developing, manufacturing, and marketing generic pharmaceuticals.

Defendant Barr Laboratories, Inc. ("Barr") is a New York corporation with its principal place of business in Pomona, New York. Like Invamed, Barr is engaged in the business of developing, manufacturing, and marketing generic pharmaceuticals.

Defendant Brantford Chemicals Inc. ("Brantford") is a Canadian corporation with its principal place of business in Ontario, Canada. Brantford was formerly known as ACIC (Canada) Inc. It is engaged in the business of manufacturing and marketing chemical compounds used in the manufacture of pharmaceuticals. Brantford conducts substantial business in the United States.

Sherman is an individual residing in Ontario, Canada. He conducts substantial business in the United States.

Holdings is a Canadian corporation with its principal place of business in Ontario, Canada.

Apotex is a Canadian corporation with its principal place of business in Ontario, Canada.

Sherman Delaware is a Delaware corporation with its principal place of business in the State of Delaware.

### Prior Proceedings

Invamed's complaint contains eleven counts alleging violations of the federal antitrust laws, tortious interference with contract and with business relationships, contract, and tort claims. Including the claims mentioned above on which the Affiliates have moved, Invamed in its fifth cause of action alleges unlawful acquisition of Brantford by the Affiliates and Barr in violation of section 7 of the Clayton Act, 15 U.S.C. § 18, as well as sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. The remaining claims, the sixth, seventh, tenth, and eleventh, are directed at Brantford only and are based on contract and tort principles for its refusal and failure to supply clathrate to Invamed.

The complaint was filed on February 6, 1998. The instant motion was filed on April 9, 1998. Oral arguments were heard on June 24, 1998, at which time the motion was deemed fully submitted.

### Facts

In considering a motion to dismiss, the facts alleged in the complaint are presumed to be true and all factual inferences must be drawn in the plaintiff's favor and against the defendants. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.1993); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989); Dwyer v. Regan, 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations considered here and set forth below are taken from Invamed's complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motion.

Invamed and Barr are competitors in the business of developing, manufacturing, and marketing generic pharmaceuticals. In particular, Invamed and Barr each have submitted applications to, and received permission from, the Food & Drug Administration ("FDA") to market warfarin sodium, an oral anti-coagulant medication. According to Invamed, to date no other generic pharmaceutical company has received FDA approval to sell warfarin sodium.

Warfarin sodium clathrate ("clathrate") is the principal active ingredient in warfarin sodium, and there are no substitutes for clathrate in the production of warfarin sodium. Without an FDA-approved source of clathrate, a pharmaceutical company cannot enter the market for warfarin sodium. Brantford is the only commercially available source for clathrate that has been approved for use in the United States by the FDA. Accordingly, a marketer of warfarin sodium would be dependent on Brantford for the supply of clathrate in order to produce warfarin sodium. Brantford supplies clathrate to Barr, and Invamed asserts that Brantford supplied clathrate to it prior to the events it details in the complaint.

In short, Invamed alleges Brantford has the ability to exercise monopoly power and substantial market power over the market for clathrate for use in the production of

warfarin sodium. Through two chains of ownership or control, the Affiliates and Barr are able to exercise dominion and control over Brantford and therefore control entry into the warfarin sodium market(s) by controlling access to clathrate. As a result, asserts Invamed, Barr and the Affiliates enjoy and are able to perpetuate monopoly power and substantial market power over the market(s) for warfarin sodium.

Sherman Delaware directly or indirectly owns a majority of the issued stock of Barr and effectively controls Barr. Sherman Delaware is in turn controlled by Sherman, who owns the majority of Sherman Delaware stock. As the result of its acquisition in August 1996, Brantford is controlled by Apotex, which is controlled by Holdings, which in turn is controlled by Sherman. In other words, through the chains of ownership running up from Barr to Sherman and down from Sherman to Brantford, Barr and the Affiliates are able to exercise control over Brantford and to use that power to choke off competition in the warfarin sodium market(s).

According to Invamed, prior to the August 1996 acquisition of Brantford, in the course of applying to the FDA for permission to market warfarin sodium, Invamed purchased quantities of clathrate from Brantford, used clathrate supplied by Brantford to develop its warfarin sodium tablets, obtained a "Letter of Access" from Brantford for its "Master Drug File" at the FDA for submission to the FDA with Invamed's application and, with the knowledge and approval of Brantford, advised the FDA that Brantford would be the supplier of clathrate for Invamed's warfarin sodium following FDA approval. Subsequent to the acquisition of Brantford, Invamed in September 1996 received notification from Brantford of its continued willingness to supply clathrate, and thereafter Brantford repeatedly reaffirmed its willingness to supply clathrate to Invamed upon Invamed's receiving approval from the FDA to market warfarin sodium. However, following Invamed's receipt of approval in October 1997, Brantford refused to supply clathrate to Invamed and has continued to refuse to deal with Invamed. Moreover, by letter dated December 3, 1997, Brantford purported to withdraw its "Letter of Access" issued to Invamed and advised the FDA of this withdrawal.

As a result of Brantford's acts, Invamed maintains that it is and will continue to be unable to market warfarin sodium despite its receipt of FDA approval and to compete with Barr.

In the complaint, Invamed includes a "background" section comprised of 24 paragraphs of factual averments. As to the Affiliates, this section contains but one sentence mentioning them; it states that "[u]pon information and belief, in or about August 1996, defendants Barr and Sherman, through Holdings and Apotex, acquired control of ACIC (Canada) Inc. and changed its name to Brantford." (Compl.¶ 36.)

## Discussion

### I. The Affiliates Have Not Waived Their Right to Move to Dismiss Pursuant to Rule 12(b)(6)

According to Invamed, the instant motion should be denied because the Affiliates did not make their motion to dismiss prior to answering the complaint in accordance with Rule 12(b)(6). In this case, the Affiliates filed their answers and this motion simultaneously on April 9, 1998.

> Although Fed.R.Civ.P. 12(b) encourages the responsive pleader to file a motion to dismiss before pleading, nothing in the rule prohibits the filing of a motion to dismiss with an answer.... A plaintiff is not prejudiced by the filing of such motion[ ] simultaneously with an answer, as was done here, and that very filing puts the plaintiff on notice that the defendant is not waiving its right to assert the motion[ ].

*Beary v. West Publ'g Co.*, 763 F.2d 66, 68 (2d Cir.1985); *see* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1361 (2d ed.1990) (explaining that "should defendant file a Rule 12(b) motion simultaneously with his answer, the court will view the motion as having preceded the answer and thus as having been interposed in timely fashion").

Invamed also notes that the Affiliates submitted answers to the complaint, including answering claims challenged on this motion. However, the Affiliates point out that they were required to answer the averments set forth in paragraphs 41 through 66 (which are contained in the First through Fourth Causes of Action) because those averments are incorporated into the Fifth Cause of Action which the Affiliates did answer and are not moving to dismiss. They assert that they did not answer any of the averments in the Eighth and Ninth Causes of Action which they also moved to dismiss since none of those averments are incorporated in the Fifth Cause of Action.

Because the motion was timely filed, it will not be denied due to failure to conform with the Federal Rules of Civil Procedure. Thus the merits of the motion must be addressed.

## II. *Standard for Reviewing a 12(b)(6) Motion*

In deciding the merits of a motion to dismiss for failure to state a claim, all material allegations composing the factual predicate of the action are taken as true, for the court's task is to "assess the legal feasibility of the complaint, not assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (*quoting Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980)). Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195, (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59, (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957).

█ "In practice 'a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" *Fort Wayne Telsat v. Entertainment & Sports Prog. Network,* 753 F.Supp. 109, 111 (S.D.N.Y.1990) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984)).

█ Rule 8(a)(2) of the Federal Rules of Civil Procedure mandates that a complaint contain a "short and plain statement of the claim" that demonstrates "that the pleader is entitled to relief." In antitrust cases, "where 'the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Building Co. v. Trustees of the Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) (quoting *Poller v. Columbia Broadcasting*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)). However, the Federal Rules do "not permit conclusory statement to substitute for minimally sufficient factual allegations." *Furlong v. Long Island College Hosp.*, 710 F.2d 922, 927 (2d Cir.1983).

## III. *The Affiliates' Motion to Dismiss is Granted With Leave to Replead*

The Affiliates move to dismiss Invamed's First, Second, Third, Fourth, Eighth, and Ninth Causes of Action, claiming that there are no allegations in the complaint which would establish that the Affiliates took part in the conduct that provides the basis for those claims—*i.e.*, Brantford's refusal to sell clathrate to Invamed. The Affiliates do not move to dismiss the Fifth Cause of Action, which alleges that the acquisition of Brantford was unlawful pursuant to section 7 of the Clayton Act, 15 U.S.C. § 18, as well as sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. This is useful to note because, as the Affiliates maintain, Invamed, try as it might, cannot satisfy its burden at bar by referring to the Fifth Cause of Action and phantom allegations which do not exist in the complaint.

█ Invamed would prefer to discuss this fifth claim; however, the allegation supporting that cause of action does not save Invamed's other claims against the Affiliates. The Fifth Cause of Action is based on a different factual theory—the Affiliates' acquisition of stock in Brantford—and an addition-

al legal theory—section 7 of the Clayton Act. As the Affiliates represent, if Invamed's logic is accepted, such that the First through Fourth Causes of Action are based on the same legal and factual theories as the Fifth, then those first four claims may be subject to dismissal because they would be redundant and duplicative. While a plaintiff may plead in the alternative, he or she "may not plead the same claim more than once." *Aramony v. United Way of America*, 949 F.Supp. 1080, 1084 (S.D.N.Y.1996).

Invamed alleges two actions in its complaint, which, according to Invamed, constitute anticompetitive conduct in violation of sections 1 and 2 of the Sherman Act. One is Brantford's refusal to supply clathrate to Invamed. In its First Cause of Action, for instance, Invamed contends that,

> Defendants unlawfully and in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, have used, are using and, if not restrained by the Court, will continue to use, their power over the market for clathrate for use in the production of warfarin sodium to distort, foreclose and otherwise adversely affect competition in the market(s) for generic warfarin sodium and/or branded and generic warfarin sodium by, among other things, refusing to deal with, and supply clathrate to, producers and marketers of warfarin sodium (other than defendants themselves), including Invamed.

(Compl.¶ 50.) The Second through Fourth Causes of action, each of which is brought pursuant to either section 1 or 2 of the Sherman Act, as well as the Eighth and Ninth Causes of Action for tortious interference, appear to be based on the same "refusal to deal" by Brantford.

The other conduct alleged to violate the Sherman Act is the Affiliates' acquisition of the stock of Brantford, which provides the basis for Invamed's Fifth Cause of Action entitled "Unlawful Acquisition." It alleges the following:

> The acquisition of the stock and/or assets of defendant Brantford (then known as ACIC (Canada) Inc.) by defendant Apotex, and, through Apotex, by defendants Holdings, Sherman, [Sherman] Delaware and Barr violates Section 7 of the Clayton Act, 15 U.S.C. § 18, as well as Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 & 2, in that it has lessened, and, if not restrained, is likely in the future to lessen, competition or to tend to create a monopoly in interstate commerce in generic warfarin sodium and/or branded and generic warfarin sodium.

(Compl.¶ 68.)

As distinct causes of action are alleged based on different factual theories, the claims at issue will not be dismissed as redundant and duplicative.

Invamed contends that the complaint establishes an integrated scheme by the Affiliates, Barr, and Brantford to take control of the clathrate market and thereafter assert that control—in essence, that the events are interrelated rather than distinct. Although Invamed has a point, as demonstrated below, each element of each cause of action must nonetheless be adequately alleged in order for Invamed to escape dismissal. In this respect, Invamed has not carried its burden.

**A. *Invamed's Claims for Monopolization and Attempted Monopolization Against the Affiliates, the First and Second Causes of Action, Respectively, Fail to Adequately Allege That the Affiliates Engaged in Anticompetitive Conduct***

While section 1 of the Sherman Act forbids contracts or conspiracies in the restraint of trade or commerce, section 2 "addresses the actions of single firms that monopolize or attempt to monopolize, as well as conspiracies and combinations to monopolize."[1] *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 454, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993). Invamed has alleged all three causes of action encompassed by section 2. The first two, monopolization and attempt to monopolize, which are delineated in the first

---

1. Section 2 reads, in relevant part, as follows: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony...." 15 U.S.C. § 2.

and second claims, are discussed in this section, while the third, conspiracy to monopolize, found in the Third Cause of Action, will be discussed in the following section.

■ To state a claim of monopolization under section 2, Invamed must establish "(1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Volvo North America Corp. v. Men's Int'l Prof'l Tennis Council,* 857 F.2d 55, 73 (2d Cir.1988) (citing *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 596 n. 19, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966))); *see Fort Wayne,* 753 F.Supp. at 112. This section of the Sherman Act is "aimed ... at the acquisition or retention of effective market control." *United States v. Griffith,* 334 U.S. 100, 107, 68 S.Ct. 941, 92 L.Ed. 1236 (1948). It is designed to prevent "a pernicious market structure in which the concentration of power saps the salubrious influence of competition." *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 272 (2d Cir.1979).

■ Even if a defendant has monopoly power to satisfy the first element of the claim, a plaintiff must show more. After all, section 2 "does not prohibit monopoly simpliciter." *Id.* at 273. "The mere possession of monopoly power does not *ipso facto* condemn a market participant. But, to avoid the proscriptions of § 3, the firm must refrain from conduct directed at smothering competition." *Id.* at 275. It is not the possession, "but the abuse" of monopoly power that violates section 2. *Olympia Equip. Leasing Co. v. Western Union Telegraph Co.,* 797 F.2d 370, 374 (7th Cir.1986). Hence, because monopoly power is not unlawful *per se,* but rather becomes illegal as a result of anticompetitive behavior, the second element of a section 2 monopolization claim requires an allegation that the Affiliates willfully engaged in anticompetitive behavior in the relevant market. *See Volvo,* 857 F.2d at 73; *Fort Wayne,* 753 F.Supp. at 112.

■ To demonstrate attempted monopolization under the same section, a plaintiff must prove "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum,* 506 U.S. at 456, 113 S.Ct. 884; *see Volvo,* 857 F.2d at 73–74; *Fort Wayne,* 753 F.Supp. at 113.

■ Both causes of action, monopolization and attempt to monopolize, require anticompetitive behavior on the part of the Affiliates. It is this behavior that Invamed insufficiently pleads, warranting dismissal of the first two claims set forth in the complaint.

■ Invamed states that "Brantford has monopoly power and substantial market power over the market for clathrate for use in the production of warfarin sodium," (Compl.¶ 48), and states the reasons for its belief. The Complaint continues:

49. Through their ownership and control of Brantford, Sherman, Barr, [Sherman] Delaware, Holdings and Apotex also have monopoly power and substantial market power over the market for clathrate for use in the production of warfarin sodium.

50. Defendants unlawfully and in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, have used, are using and, if not restrained by the Court, will continue to use, their power over the market for clathrate for use in the production of warfarin sodium to distort, foreclose or otherwise adversely affect the competition....

(Compl.¶ 50.)

Assuming Invamed alleges the Affiliates' market power in the clathrate market sufficiently, it, aside from its conclusory use of the term "Defendants," does not allege, let alone establish, that the Affiliates independently engaged in conduct unlawful under the Sherman Act. Invamed cannot rely on its allegation that Brantford, another defendant, engaged in monopolistic practices with respect to the clathrate market by its refusal to supply clathrate to Invamed to satisfy its requirement that the Affiliates too exercised this monopoly power, that is, the refusal to

deal with Invamed. This holds true for the attempted monopoly claim as well. The complaint is devoid of any allegation from which predatory or anticompetitive conduct on the part of the Affiliates may be inferred. All of the exclusionary conduct in the complaint is alleged to have been undertaken by Brantford only.

 Invamed counters that it does allege that the Affiliates and Barr acquired control of Brantford for the monopolistic purpose of foreclosing competition in the market for warfarin sodium and that they did cause Brantford to refuse to provide clathrate to marketers of warfarin sodium other than Barr. However, the complaint contains no such allegation, nothing to demonstrate that the Affiliates were involved in Brantford's actions in any way. As stated by the United States Supreme Court, "[i]t is not . . . proper to assume that [plaintiff] can prove facts that it has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged." *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

Invamed, in a somewhat confusing statement, asserts that by conceding the adequacy of the allegations of unlawful acquisition and the potential for liability therefor, in that they did not move to dismiss that claim, the Affiliates have effectively undermined their position on this motion. Invamed's attempt to lessen its burden in establishing certain causes of action by relying on the allegations of another fails. The unlawful acquisition claim is predicated on the acquisition of the stock and assets of Brantford and its effect on competition. This does not vitiate Invamed's burden to properly allege its First and Second Causes of Action grounded in Brantford's refusal to deal with it. Some action, apart from the acquisition of Brantford, must be alleged to satisfy the pleading requirements of section 2 of the Sherman Act.

 Moreover, contrary to Invamed's implicit proposition, the Affiliates may not be held liable for Brantford's refusal to supply clathrate to Invamed solely due to their corporate affiliation with Brantford.[2] *See Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 441 (9th Cir.1979) (finding that the relationship of parent and subsidiary between defendant and others which violated antitrust laws is not enough to state a claim); *see also Greene County Mem'l Park v. Behm Funeral Homes*, 797 F.Supp. 1276, 1292 (W.D.Pa.1992) (rejecting assertion that stock ownership raises a presumption that shareholder was involved in the anticompetitive conduct of corporation).

As noted above, that the Affiliates possess market power through their alleged ownership interests in Brantford, standing alone, does not satisfy the pleading requirements of a monopolization or attempted monopolization claim. *See, e.g., International Audiotext Network, Inc. v. AT & T*, 893 F.Supp. 1207, 1219 (S.D.N.Y.1994). Absent allegations of anticompetitive conduct by the Affiliates, "there is no basis for holding [them] liable for the alleged antitrust violations of their subsidiary." *Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 685 F.Supp. 400, 403 (S.D.N.Y.1988) ("Thus, in the absence of a basis for piercing the corporate veil, the parent or grandparent may be held liable only if shown to have acted independently to affect the market [at issue]."); *accord MCI Telecomm. Corp. v. Graphnet, Inc.*, 881 F.Supp. 126, 131 (D.N.J.1995) (dismissing a section 2 claim against the defendant because the allegations of monopolistic conduct in the complaint referred only to the conduct by the defendant's affiliate).

Invamed has not alleged that the Affiliates were involved with, or participated in, Brantford's refusal to supply clathrate to it. Ac-

---

**2.** Curiously, Invamed states in its opposition papers that in its claims of monopolization and attempted monopolization, it treats defendants as a single enterprise consistently with the implications of *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). In *Copperweld*, discussed below, the Supreme Court ruled that members of an affiliated group cannot conspire in violation of section 1 of the Sherman Act. *Id.* at 777, 104 S.Ct. 2731. However, the Court did not hold that members of a corporate group thus should be treated as a single enterprise under section 2.

cordingly, the First and Second Causes of Action are dismissed.

### B. *Invamed's Claims Alleging Conspiracy to Monopolize and Conspiracy in Restraint of Trade, the Third and Fourth Causes of Action, Respectively, Fail to Demonstrate That the Affiliates Entered into a Conspiracy With Barr and Brantford*

■ Invamed's Third Cause of Action, conspiracy to monopolize, is a claim under section 2 of the Sherman Act. To establish this claim, Invamed must allege facts sufficient to support (1) concerted action; (2) overt acts in furtherance of the conspiracy; and (3) specific intent to monopolize. *See Volvo,* 857 F.2d at 74; *Kramer v. Pollock–Krasner Found.,* 890 F.Supp. 250, 255 (S.D.N.Y.1995).

■ Invamed's Fourth Cause of Action, conspiracy in restraint of trade, is based on section 1.[3] To withstand a motion to dismiss, the plaintiff in a Sherman Act conspiracy claim must allege a concerted action by two or more persons that unreasonably restrains interstate or foreign trade or commerce. *See In re Nasdaq Market–Makers Antitrust Litig.,* 894 F.Supp. 703, 710 (S.D.N.Y.1995); *Three Crown Ltd. Partnership v. Caxton Corp.,* 817 F.Supp. 1033, 1047 (S.D.N.Y.1993); *Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Servs.,* 746 F.Supp. 320, 325 (S.D.N.Y.1990); *accord International Distrib. Ctrs., Inc. v. Walsh Trucking Co.,* 812 F.2d 786, 793 (2d Cir.1987).

■ As to both conspiracy claims, Invamed has failed to satisfy the liberal pleading standards of Rule 8. The requirements of Rule 8 in the context of conspiracy have been described as follows:

> [T]he general principles of "notice pleading" under Rule 8 apply to pleading averring conspiracy. However, while Rule 8 demands only a "short and plain statement of the claim showing that the pleader is

entitled to relief," in a pleading of conspiracy it is important that within the pleader's ability to do so, and without going into unnecessary detail, the opposing party be informed of the nature of the conspiracy charge, to which he may adequately plead.

> It is not enough merely to state that a conspiracy has taken place. Where possible, there should be some details of time and place and the alleged effect of the conspiracy. This is not to say that the pleader must plead evidence; further details may be secured by means of discovery, and related devices. Moreover, great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of the pleading.

2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.17[5] (1986) (footnotes omitted), *quoted in In re Nasdaq,* 894 F.Supp. at 711. Thus, even notice pleading requires that facts be pleaded to support a conspiracy claim. *See North Jersey Secretarial School, Inc. v. McKiernan,* 713 F.Supp. 577, 584 (S.D.N.Y.1989). "[A] bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal." *Heart Disease Research Found. v. General Motors Corp.,* 463 F.2d 98, 100 (2d Cir.1972). As mandated by the Supreme Court, in *Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. 752, 764, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), "the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the [defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective."

The most alleged by Invamed in its Third Cause of Action is that:

> To the extent defendants, or some of them, are deemed to be separate and independent entities, defendants have acted pursuant to a conspiracy, combination or agreement for the specific purpose of mon-

---

**3.** Section 1 of the Sherman Act reads, in relevant part:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby de-

clared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony . . . .

15 U.S.C. § 1.

opolizing the market(s) for generic warfarin sodium and/or branded and generic warfarin sodium.

(Compl.¶ 60.) Likewise, the Fourth Cause of Action states:

> To the extent defendants, or some of them, are deemed to be separate and independent entities, defendants have acted pursuant to a conspiracy, combination or agreement for the purpose, and/or with the likely effect, of restraining trade in the market(s) for generic warfarin sodium and/or branded and generic warfarin sodium in violation of the Sherman Act, 15 U.S.C. § 1.

(Compl.¶ 64.)

■ The complaint fails to support the existence of a conspiracy as it presents no facts that might establish any participation by the Affiliates in the alleged conspiracy, save including them within the term "defendants." As in the first two claims, Invamed has not alleged that the Affiliates "acted" in any way, whether pursuant to a conspiracy or not. *See Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.,* 960 F.Supp. 701, 704 (S.D.N.Y.1997) (" '[C]onclusory allegations which merely recite the litany of antitrust' " are not sufficient to state a claim (citation omitted)).

■ Although an "overt act need not be pleaded against each defendant, because a single overt act by just one of the conspirators is enough to sustain a conspiracy claim even on the merits," *State of N.Y. v. Cedar Park Concrete Corp.,* 665 F.Supp. 238, 246–47 (S.D.N.Y.1987), Invamed first must claim that the Affiliates engaged in concerted action. *See Monsanto,* 465 U.S. at 761, 104 S.Ct. 1464. In effect, Invamed must allege some circumstances from which the existence of an anticompetitive agreement, express or implied, of which the Affiliates were a part can be inferred. *See Transport Limousine of Long Island, Inc. v. Port Auth. of N.Y. and N.J.,* 571 F.Supp. 576, 586 (E.D.N.Y. 1983) ("A finding of an anticompetitive agreement ... between two or more persons is fundamental to any Section 1 claim.").

Here, Invamed has not alleged that there was concerted action between any of the defendants, much less involving the Affiliates. *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 687 F.Supp. 832, 837 (S.D.N.Y.1988) (dismissing Sherman Act conspiracy claim because claimant failed to allege "what concerted actions these parties took to further their goal"). Nor has Invamed alleged any fact from which this Court could infer that the Affiliates had a "meeting of the minds" or an agreement with Brantford, Barr, or both of them to perform an unlawful act.

■ What Invamed succeeds in alleging is a string of events that, on the face of the complaint, may be as consistent with unilateral action, which does not violate the antitrust laws, as with concerted action. *See World Arrow Tourism Enters., Ltd. v. Trans World Airlines, Inc.,* 582 F.Supp. 808, 810 (S.D.N.Y.1984) (dismissing complaint which, stripped of its conclusory conspiracy allegations, alleges nothing more than a unilateral decision which affected plaintiff's business); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (noting that "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy"). Indeed, Brantford's refusal to deal with Invamed—the averment upon which these claims are premised—alleges nothing more than unilateral action by Brantford. *See Monsanto,* 465 U.S. at 761, 104 S.Ct. 1464 ("A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes as long as it does so independently."); *Kramer,* 890 F.Supp. at 256 (dismissing claim because "the defendants' allegedly conspiratorial actions could equally have been prompted by lawful, independent goals which do not constitute a conspiracy").

■ Invamed challenges that it has satisfied the concerted action requirement by pointing to the Affiliates' participation in the acquisition of Brantford. According to Invamed, it has thus met its burden in demonstrating "contract, combination or conspiracy" under the Sherman Act. In further support for its proposition, Invamed cites to *Eskofot A/S v. E.I. Du Pont De Nemours &*

*Co.*, 872 F.Supp. 81 (S.D.N.Y.1995). An alleged acquisition, however, does not give rise to a claim for conspiracy under the Sherman Act, and Invamed's reliance on *Eskofot* is misplaced. *Eskofot* involved a claim based on a "contract and combination" in restraint of trade, not a conspiracy as alleged here. *Id.* at 91–92. The *Eskofot* court discussed at length the differences between pleading a contract or combination under the Sherman Act and pleading a conspiracy. *Id.* at 92–93. The court ultimately determined that the plaintiff was not required to meet the obligations of pleading a conspiracy because "[t]here [was] no allegation of conspiracy; rather, plaintiff allege[d] that defendants entered into combinations and contracts in restraint of trade." *Id.* at 92.

■ As the court in *Eskofot* explained, where, as in the instant case, a cause of action is based on an alleged conspiracy, "a plaintiff must demonstrate that there was a 'conscious commitment to a common scheme.' " *Id.* (quoting *Monsanto*, 465 U.S. at 764, 104 S.Ct. 1464). Here, Invamed does not attempt to assert that it has alleged in its complaint that the Affiliates "agreed with anyone to take action or not to take action with the intent of furthering" the alleged conspiracy with Brantford to refuse to supply clathrate to Invamed. *See Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 669 F.Supp. 1244, 1259 (S.D.N.Y.1987). Without such allegations, the claims of conspiracy to monopolize and conspiracy in re-

straint of trade cannot proceed. *See id.; Telectronics Proprietary*, 687 F.Supp. at 837.

Invamed seeks to neutralize any such inadequacy of its pleadings by urging that having joined the "contract, combination or conspiracy" at the time of acquisition of Brantford, the Affiliates are presumed to have continued to participate in their unlawful concerted activity at the stage of executing the scheme by causing Brantford not to deal with potential marketers of warfarin sodium. However, to reiterate, the complaint is devoid of any allegation that the Affiliates *caused* Brantford to do, or refrain from doing, anything. Additionally, Invamed's reliance on *United States v. Continental Group, Inc.*, 603 F.2d 444, 466–67 (3d Cir.1979), for the proposition that a conspirator at one phase of the conspiracy is liable for subsequent actions taken during the conspiracy is beside the point as Invamed has not adequately alleged that the Affiliates engaged in a conspiracy in the first instance.

■ Invamed's bare-boned statement that the Affiliates participated in a conspiracy—in the absence of any averments linking the Affiliates to a conspiratorial agreement— is insufficient to state a cause of action against the Affiliates. *See Michelson*, 669 F.Supp. at 1259 (dismissing antitrust conspiracy claim absent allegation that defendant agreed with anyone to take action, or not to take action, with the intent of furthering the conspiracy). Therefore the Third and Fourth Causes of Action are dismissed.[4]

4. It bears noting that the issue of whether the Affiliates are legally incapable of engaging in a conspiracy with Brantford and Barr due to the alleged corporate structure of these entities will rear its head at some point in this litigation. The seminal case on this topic is *Copperweld*, which held that the coordinated acts of a parent and its wholly owned subsidiary cannot, in the legal sense contemplated by the Sherman Act, constitute a combination or conspiracy. The Court explained the rationale for its holding:

If a parent and a wholly-owned subsidiary do "agree" to a course of action, there is no sudden joining of economic resources that had previously served different interests, and there is not justification for § 1 scrutiny.

Indeed, the very notion of an "agreement" in Sherman Act terms between a parent and a wholly-owned subsidiary lacks meaning. A § 1 agreement may be found when "the conspirators had a unity of purpose or a common design and understanding, or meeting of minds

in an unlawful arrangement." But in reality a parent and a wholly-owned subsidiary always have a "unity of purpose or a common design."

*Copperweld*, 467 U.S. at 771, 104 S.Ct. 2731 (citations omitted).

The Fifth Circuit in *Century Oil Tool, Inc. v. Production Specialties, Inc.*, 737 F.2d 1316 (5th Cir.1984), surmised that

given *Copperweld*, we see no relevant difference between a corporation wholly owned by another corporation, two corporations wholly owned by a third corporation or two corporations wholly owned by three persons who together manage all affairs of the two corporations. A contract between them does not join formerly distinct economic units. In reality, they have always had "a unity of purpose or a common design."

*Id.* at 1317 (citations omitted).

In the same vein, the court in *Gucci v. Gucci Shops, Inc.*, 651 F.Supp. 194 (S.D.N.Y.1986),

### C. *Invamed's Claims of Tortious Interference With Contract and Business Relations Do Not Adequately Allege That the Affiliates Took Any Action to Interfere With Invamed's Contract and Business Relationship With Brantford*

■ To state a claim for tortious interference with contractual relations under New York law, a plaintiff must allege "(1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages." *150 East 58th St. Partners, L.P. v. Wilkhahn Wilkening & Hahn GmbH & Co.*, No. 97 CIV. 4262(SHS), 1998 WL 65992, at *1 (S.D.N.Y. Feb.17, 1998) (*quoting Riddell Sports Inc. v. Brooks*, 872 F.Supp. 73, 77 (S.D.N.Y.1995)); *see Jews for Jesus, Inc. v. Jewish Community Relations Council of N.Y., Inc.*, 968 F.2d 286, 292 (2d Cir.1992); *Union Carbide Corp. v. Montell N.V.*, 944 F.Supp. 1119, 1136 (S.D.N.Y. 1996); *Foster v. Churchill*, 87 N.Y.2d 744, 749–50, 665 N.E.2d 153, 156, 642 N.Y.S.2d 583, 586 (1996).

■ The standard for demonstrating tortious interference with business relations "is somewhat more stringent." *Campo v. 1st Nationwide Bank*, 857 F.Supp. 264, 273 (E.D.N.Y.1994); *see International Minerals and Resources, Inc. v. Pappas*, 761 F.Supp. 1068, 1075 (S.D.N.Y.1991). A plaintiff must allege that defendants interfered with business or economic relations between the plaintiff and a third party, either with the sole purpose of harming the plaintiff or by dishonest, unfair, or improper means. *See PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 269 (2d Cir.1987); *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F.Supp. 477, 482 (S.D.N.Y.), *cert. denied*, —— U.S. ——, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997); *Houbigant, Inc. v. ACB Mercantile*, 914 F.Supp. 964, 995 (S.D.N.Y.1995); *Campo*, 857 F.Supp. at 273. Indeed, the defendant "must interfere with the business relationship directly; that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Fonar Corp.*, 957 F.Supp. at 482.

In order to dodge a dismissal, Invamed must allege that the Affiliates took some action directed at Brantford to induce Brantford either to breach its alleged contract to

---

found that an Italian corporation and a New York corporation that were under common ownership were incapable of conspiring with each other as contemplated by the Sherman Act. The court stated:

> While the discussion in *Copperweld* was limited to employees within a single firm, the reasoning employed there applies equally to officers of two separate corporations with identical owners. Just as a parent and its wholly owned subsidiary have common objectives, so too a group of corporations with identical owners are guided by a single consciousness—their objectives are common, not distinct. The officers of the firms "are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals."

*Id.* at 198 (citation omitted).

At present, information is lacking for a determination of whether a conspiracy claim under section 1 or 2 may lie in this case. Therefore the ability to conspire will necessarily have to be determined at a later date.

Invamed asserts that it has pleaded the conspiracy claims as an alternative to the First and Second Causes of Action, noting that if defendants are deemed *not* to be a "single enterprise," they may be liable under the conspiracy theories. Yet this does not *a fortiori* foreclose the possibility of liability under the First and Second Causes of Action. The First through Third Causes of Action are brought pursuant to section 2 while the Fourth is under section 1. The two sections of the Sherman Act proscribe two distinct statutory offenses: section 1 prohibits restraints of trade and section 2 prohibits monopoly. Additionally, section 2 proscribes three different types of behavior: monopoly, attempt to monopolize, and conspiracy to monopolize. A plaintiff may allege one or all three. Unlike section 1, a single firm may be liable under section 2. If it is determined that the defendants in this action are part of the same corporate group, Invamed's conspiracy claims under sections 1 and 2 will fail. However, it does not follow that the defendants "alternatively" would be subject to liability under the theories of monopolization and attempted monopolization alleged in counts one and two of the Complaint. Regardless of what happens to the conspiracy claims, the section 2 claims asserted in those first two causes of action may be maintained, provided that Invamed cures the defects of its pleadings. In short, there is no "alternate" relationship between the first and second and third and fourth causes of action.

supply clathrate to Invamed or to convince Brantford not to enter into a business relationship with Invamed. *See id.* at 481. However, Invamed relies on a single sweeping legal conclusion as the basis of its claims against the Affiliates:

Defendants Barr, Sherman, [Sherman] Delaware, Holdings and Apotex, acting individually or jointly, intentionally interfered with Brantford's performance of its agreement with Invamed, and acted with a malicious intent and/or employed illegal means in so doing.

(Compl.¶ 81.) In accordance with the theme requiring dismissal of claims one through four, the complaint does not contain any allegations which would support these legal conclusions. *See generally Fonar Corp.,* 957 F.Supp. at 482.

 Invamed again repeats the same justification which it invoked to save its Sherman Act claims, namely that the complaint does allege that the Affiliates participated in the acquisition of Brantford and in causing Brantford to dishonor its contract and relationship with Invamed. Yet how the acquisition rises to the level of tortious interference with contract or relationship between Invamed and Brantford is a mystery which Invamed does not attempt to explain. The other conduct—the Affiliates "causing" Brantford to dishonor its contract and relationship with Invamed—as shown above is not contained anywhere in the complaint.

No factual averments have been included in the complaint from which it may be inferred that the Affiliates took action toward interfering with the contract or business relationship between Invamed and Brantford. *See Campo,* 857 F.Supp. at 273 (dismissing tortious interference claim because the complaint did not allege "any particular actions taken by defendants to procure a [contract] breach"). As a result, the Eighth and Ninth Causes of Action are dismissed.

### Conclusion

For the reasons set forth above, the Affiliates' motion to dismiss is granted. Invamed

shall have twenty (20) days from the date of this decision to replead.

It is so ordered.