**H. Price JESSUP, Linda Vaughn, Sally A. Kelly, Susan Owens, Annette Watkins and Nancy Hope Love, on their own behalf and as Representatives of a class, Plaintiffs,**

v.

**The AMERICAN KENNEL CLUB, INC., and Labrador Retriever Club, Inc., Defendants.**

No. 94 Civ. 5215(TPG).

United States District Court, S.D. New York.

Aug. 20, 1999.

**6**

Steven D. Gladstone, Gladstone & Watkins, P.C., Mount Pocono, PA, for plaintiffs.

Dale C. Christensen, Jr., Seward & Kissel, New York City, for defendant The American Kennel Club, Inc.

Samuel J. Abate, McCarter & English LLP, New York City, Marshall Simonds, Goodwin, Procter & Hoar LLP, Boston, MA, for defendant Labrador Retriever Club, Inc.

### OPINION

GRIESA, District Judge.

This is a class action antitrust suit for damages and injunctive relief. Plaintiffs, owners and breeders of purebred Labrador Retriever dogs ("Labs"), claim that rival breeders and sellers of Labs conspired to cause one defendant, the Labrador Retriever Club ("LRC"), to recommend, and the other defendant, the American Kennel Club ("AKC"), to adopt, a new rule concerning breed standards for AKC-registered, purebred Championship Stock Labrador Retrievers ("Champion Labs"). The new breed standard requires Labs to be of a certain height in order to compete in AKC dog shows for the title of Champion Lab. The attainment of that title increases the market value of a purebred Lab. Plaintiffs allege that the new rule operates to exclude from the market for Champion Labs a large number of the dogs that plaintiffs breed from English bloodlines, but includes in the market the narrower and taller Labs more recently developed in the United States that are bred and sold by plaintiffs' competitors.

Plaintiffs and defendants have filed cross-motions for summary judgment on claims 1–5 of the complaint alleging violations of the Sherman Act §§ 1 and 2, 15 U.S.C. §§ 1, 2. Claims 6 and 7 alleging state corporate law violations are not addressed by these motions.

Defendants' motion is granted and plaintiffs' cross-motion is denied. Claims 1–5 are dismissed. The court declines to retain jurisdiction over the state law claims (6 and 7). Accordingly, the entire action is dismissed without prejudice to plaintiffs to renew the state law claims in state court.

### Facts

Plaintiff class representatives are six individual owners, breeders and sellers of purebred Labs. Defendant AKC is a not-for-profit corporation chartered by the New York Legislature for the protection and advancement of purebred dogs. Membership in the AKC consists of more than 500 dog clubs from across the country. The AKC's chartered purposes include advancement of the breeding, exhibition and maintenance of the purity of purebred dogs, as well as the adoption and enforcement of rules regulating and governing competitive dog shows. The bulk of the AKC's revenues are generated through registration fees and show entries at AKC dog shows and at performance events. The AKC does not compete or engage in the breeding, selling or showing of Labs.

The AKC currently registers 145 breeds of purebred dogs. The majority of these registered breeds each have parent clubs which assume primary responsibility for promoting and advancing each club's particular breed. The LRC is a not-for-profit corporation and the parent club for the Labrador Retriever breed. The LRC's membership consists of several hundred individual Lab enthusiasts from across the country. The LRC does not compete or engage in the breeding, selling or showing of Labs.

Pursuant to the AKC's constitution, each registered breed's parent club has the responsibility of defining the standard for its breed. The "standard" for a given breed of purebred dog, including that of the Labrador Retriever, refers to a detailed, written, descriptive account of the physical characteristics—for instance, size, shape and coat—as well as movement and temperament, that are considered definitive of that breed. The breed standards are then used by judges at AKC-registered dog shows to measure and compare the quality of dogs competing in the shows. A particular physical characteristic included in the breed standard may be stated in one of two ways. It may simply be expressed as a recommendation or preference which AKC judges can then use to compare the quality of dogs competing in a show; or it may be stated as mandatory such that a dog that does not exhibit that characteristic is disqualified from competition in the show.

The AKC's constitution provides that the amendment or revision of a breed standard by the parent club for that breed does not become effective until it is approved by the AKC's board of directors. The LRC's constitution provides that amendments to the Labrador Retriever breed standard must be approved by the members of the LRC, and that such amendments only become effective after their subsequent approval by the AKC board of directors.

In practice, the LRC's recommendation, and AKC's adoption, of an amendment to the Labrador Retriever breed standard pursuant to their respective charters follows a multi-staged process, as the facts in this case demonstrate. First, a revision committee within the LRC drafts the proposed amendment and then votes by a majority to present the amendment for a vote by the LRC membership at large. A majority vote by the members of the LRC in favor of the amendment then operates to recommend the change to the AKC board of directors which must also vote by majority to adopt the amendment before it becomes effective.

The issues in this case involve a 1994 amendment to the breed standard for Labrador Retrievers. The breed standard in effect prior to the 1994 amendment was approved by the AKC in 1957. The 1957 standard stated in pertinent part:

**Height at Shoulders**—Dogs—22½ inches to 24½ inches; bitches—21½ inches to 23½ inches.

As plaintiffs observe, the text of the 1957 height specification for the Labrador Retriever breed provided no express guidance as to whether it was intended merely as a recommendation or as a mandatory requirement for the breed. Plaintiffs contend that the shorter Labs from English bloodlines, bred and owned by plaintiffs, do not generally rise to the height described in the standard, whereas the taller American Labs do. The practical result of the 1957 standard was that, prior to the 1994 amendment, the height specification for Labs was not enforced as a strict requirement for purebred Labs to enter and compete in AKC-sponsored dog shows. Because height is only one of many attributes that are judged at the shows, dogs such as those belonging to plaintiffs, that fell below the height standard, were able to place and even win in dog show competitions based on superior quality in other facets of the breed standard.

Beginning in 1987, the AKC undertook a program with the help of the various breed

parent clubs to conform all breed standards to a standardized format for order and content, using standardized terminology.

In August 1989 the LRC submitted to the AKC board of directors a proposed, revised Labrador Retriever breed standard that had been drafted and approved by the LRC Revision Committee and approved by the vote of 72% of the LRC membership that participated in the vote. The proposal incorporated various changes not challenged in the present case. It retained the same height specification from the breed standard that was passed in 1957, again with no express statement as to whether the specification was a recommendation or mandatory.

Following submission of the proposed revised standard to the AKC board, the AKC received a number of letters in opposition to the revisions. The AKC subsequently returned the proposed standard to the LRC in November 1989 for further consideration of the criticisms raised.

In January 1993 the AKC board of directors received a second proposed revised standard from the LRC which had been approved by 68% of the LRC members voting. The second proposed standard again retained the original height specification from the 1957 breed standard. However, the new proposal provided for the first time that compliance with the height specification was mandatory. Specifically, it provided that any deviation from the height specification would constitute a disqualifying fault, meaning that a judge in a dog show would disqualify a dog not conforming to the height specified in the standard. Again, the AKC received letters in opposition to the new breed standard. The submissions on the present motions do not expressly state that this opposition related to the mandatory height requirement, but the implication is that at least part of the opposition related to this subject. The LRC membership subsequently approved several amendments to the second proposed revised standard,

providing with respect to the height requirement that: (1) the requirement would not apply to dogs less than 12 months old; and (2) dogs ½ inch outside the height standard would not be disqualified on the basis of height.

The amended second proposed revised standard was submitted to the AKC board of directors in November 1993. The AKC again received letters in opposition to the proposal—presumably objecting to the height requirement. The AKC then published the proposal in its own publication and solicited comment on the proposed standard.

On February 2, 1994, before the AKC voted on the proposed standard, the members of its board of directors received a letter from Richard Gross, prospective counsel for the dissenting members of the LRC and certain other Lab breeders and owners who opposed the proposed height requirement. The letter advised the board that these individuals were considering bringing a lawsuit alleging antitrust violations if the height requirement were adopted. The letter went on to itemize several ways in which the LRC had failed to comply with established procedures for adopting a new breed standard, and insisted that the proposal then before the AKC did not reflect the majority position of the LRC membership. Specifically, the letter complained to the AKC—as plaintiffs now argue to the court on the present motion— that the inclusion of a height requirement within the breed standard was not subject to an open notice and comment procedure among Lab breeders.

In February 1994, the AKC board of directors approved the amended, second revised standard by a vote of 10 to 1. The new standard became effective on March 31, 1994, thenceforth *requiring* dogs to be between 22 ½ inches and 24 ½ inches tall and bitches between 21 ½ inches and 23 ½ inches tall in order to be entered in competition at AKC-registered dog shows, except that dogs less than 12 months old, and

dogs ½ inch outside the height standard, would not be disqualified on the basis of height.

Plaintiffs contend that the new height requirement does not properly establish the height standard of the Labrador Retriever breed, precisely because the shorter Labs bred and owned by plaintiffs from English bloodlines do not grow to that size. As noted above, though the height dimensions under the 1994 amendment are the same as they have been since 1957, because the new standard makes the height specification mandatory, the dimensions included within the standard themselves have become critical for plaintiffs in a way that was not previously the case when plaintiffs' dogs were free to enter competition despite being below the height specified by the breed standard. Plaintiffs assert that certain irregularities in the process through which the LRC recommended the new breed standard to the AKC explain why a rule that is not properly representative of the breed nevertheless became a part of the breed standard.

The evidence plaintiffs present to the court of alleged irregularities in the LRC standard-setting process consists of an affidavit from David Schnare, a director, life member and former president of the LRC and owner and judge of AKC-registered Champion Labs, and a portion of the deposition testimony from Bernard Ziessow, chairman of the LRC standard revision committee which drafted the proposed standard.

Schnare states that he conducted an investigation into the procedural history of the LRC breed standard recommendation, through which he discovered not only that there was no opportunity for public comment on the new height requirement, but that the requirement was adopted into the proposed standard by only a slim margin in a committee meeting regarding which certain committee members who opposed the height requirement were not given sufficient notice to attend. According to Schnare, normally the committee's activities were carried out through the mail rather than in a meeting, thus allowing broader participation.

Ziessow testified at deposition that he did not seek input concerning the proposed revised standard from anyone outside the revision committee. Plaintiffs contend that Ziessow is their competitor in the breeding and selling of purebred Labs and that the committee proceedings were kept from the public in order to prevent plaintiffs from having a say in the process, thus advancing the anti-competitive purpose of their competitors. There is no indication on the record, however, that closing the committee's work to the public was contrary to established committee practice or a violation of the LRC's by-laws.

With respect to the AKC's decision to adopt the second, revised standard containing the new height requirement, Schnare states in his affidavit that the official vote of 10 to 1 by the board followed a "straw vote." According to Schnare, during the straw vote, the second, revised standard passed by only a single vote that was cast by AKC director and LRC president, Nelson Sills, who plaintiffs claim is also their competitor in the market for purebred Labs.

Schnare further states in his affidavit that the directors of the AKC did not give careful consideration to all the views and objections to the standards that the AKC received, and did not adequately account for the comments received during the AKC's own comment period. He concludes that the AKC board's decision to adopt the standard may have been flawed by political vote trading, and in any event that the AKC failed to create an adequate record of its deliberations to assess what considerations went into the vote.

Both parties have submitted voluminous other materials addressing the issue of market definition for purposes of applying the antitrust laws, and what, if any, adverse effect the new height requirement has had on the relevant market. It is not

necessary, however, for purposes of the motions to set forth these materials.

## Discussion

Plaintiffs allege five theories of antitrust liability. Claims 1 and 5 fall under § 1 of the Sherman Act, which forbids unreasonable contracts, combinations or conspiracies in restraint of interstate trade or commerce. 15 U.S.C. § 1. Plaintiffs allege that the AKC and LRC conspired or combined with dog owners and breeders who are plaintiffs' competitors to adopt a height requirement that would effectively exclude plaintiffs from the market for Champion Labs. Plaintiffs claim that the new height requirement constitutes an unreasonable restraint of trade and is a concerted refusal by the AKC and LRC to deal with plaintiffs.

Claims 3 and 4 fall under § 2 of the Sherman Act which forbids actions by a single party, as well as conspiracies and combinations, that monopolize or attempt to monopolize a part of interstate trade or commerce. 15 U.S.C. § 2. Claim 3 alleges that defendants' adoption of the new height requirement constitutes exclusionary conduct designed to prevent plaintiffs' dogs from competing for Champion Lab status, with the intent to enable plaintiffs' competitors to monopolize the market for Champion Labs. Claim 4 alleges that defendants conspired with plaintiffs' competitors to utilize the AKC's monopoly power over the certification of Champion Labs to enhance the market position of plaintiffs' competitors.

Claim 5 is alleged under both § 1 and § 2 of the Sherman Act. The claim is that defendants conspired with plaintiffs' competitors to deprive plaintiffs of a facility essential to plaintiffs' ability to compete in the market for Champion Labs.

With the exception of the third claim concerning exclusionary conduct with the intent to monopolize, all of plaintiffs' claims share a common element of conspiracy. Specifically, the conspiracy alleged in the complaint is that plaintiffs' competitors in the market for Champion Labs conspired with the LRC and the AKC to have the LRC recommend, and the AKC adopt, the new height requirement for the Labrador Retriever breed. The anti-competitive objective of the conspiracy, plaintiffs allege, was to preclude the shorter, English version of Labs bred by plaintiffs from competing for the title of AKC Champion Labs at AKC dog shows, thus enabling plaintiffs' competitors to charge a higher price for their taller American version of Labs which remain eligible to compete for that title.

Defendants argue that they are entitled to summary judgment because there is no evidence to support plaintiffs' allegation of a conspiracy by the LRC and AKC with plaintiffs' competitors. Plaintiffs respond that they are entitled to summary judgment on this issue because the evidence regarding the standard-setting process undertaken by the LRC and AKC in adopting the challenged height requirement demonstrates conclusively that there was a conspiracy.

To prove a conspiracy under § 1 or § 2 of the Sherman Act, plaintiffs must establish that there was an agreement by two or more parties to accomplish a specific illegal objective, be it to restrain trade under § 1, or to monopolize or attempt to monopolize trade or commerce under § 2. Evidence of a conspiracy can, of course, take the form of circumstantial evidence of defendants' conduct from which the existence of an anti-competitive agreement can be inferred. *Invamed, Inc. v. Barr Laboratories*, 22 F.Supp.2d 210, 221 (S.D.N.Y. 1998).

Plaintiffs do not purport to have direct evidence of an express agreement to restrain or monopolize trade between the AKC and LRC and plaintiffs' competitors. Rather, they contend that an unlawful agreement can be inferred from the circumstantial evidence concerning how defendants amended the Labrador Retriever breed standard to include the challenged height requirement.

■ When plaintiffs' proof of a conspiracy relies on circumstantial evidence of defendants' conduct, in the summary judgment context, the Supreme Court has instructed that if defendants can demonstrate that they had no rational economic motive to participate in an anti-competitive conspiracy, and that the conduct at issue is consistent with permissible activity under the antitrust laws, such conduct does not give rise to an inference of conspiracy unless plaintiffs come forward with evidence that tends to exclude permissible explanations for the conduct. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596–97, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *H.L. Hayden Co. v. Siemens Medical Systems,* 879 F.2d 1005, 1014 (2d Cir.1989).

■ The evidence before the court fails to raise an inference that the AKC and LRC, in adopting the challenged height requirement, were participants in an anti-competitive conspiracy with plaintiffs' competitors.

Defendants are not-for-profit corporations that exist for the purpose of maintaining definitive and uniform breed standards for purebred dogs. The LRC deals strictly with purebred Labs, while the AKC deals with all varieties of purebred dogs including Labs. As such, the AKC and LRC are not competitors in the alleged market for Champion Labs, and plaintiffs have expressly admitted that the LRC and AKC's economic interests, if anything, would favor more not less competition among breeders, which would lead to greater revenues from registration and entry fees at the various dog shows. Defendants therefore have no inherent economic motive to participate in an anti-competitive conspiracy with plaintiffs' competitors.

Moreover, there has never been any question in this case that the LRC and AKC's recommendation and adoption, respectively, of uniform breed standards is a legitimate, and indeed necessary, function to promote competition in the breeding and exhibition of purebred dogs. Without *some* definitive breed standard set by the LRC and AKC, there could not be competition among Lab owners and breeders because there would be no uniform standard against which to measure the relative quality of Labrador Retrievers. The multi-stage process at the LRC and the AKC for amending the Labrador Retriever breed standard has been described above. Plaintiffs do not challenge the existence or purpose of the AKC and LRC, nor do they contest the legitimacy of the democratic process through which the two organizations amend the Labrador Retriever breed standard.

Plaintiffs' antitrust claims instead hinge entirely on the contention that there were certain irregularities in the amendment process adding the mandatory feature to the height standard and that these alleged irregularities raise an inference that the AKC and LRC conspired with plaintiffs' competitors in adopting the revision.

Under the standard for summary judgment set forth by the Supreme Court, however, defendants' lack of an anti-competitive motive and the legitimacy of these organizations' basic activity in setting uniform breed standards require that plaintiffs come forward with evidence tending to show that the adoption of the new height requirement in this case was not the product of a legitimate standard-setting process. This plaintiffs fail to do.

Plaintiffs rely, first, on the contention that two key figures in the adoption of the new height requirement were also competitors of plaintiffs in the market for Champion Labs. The first is Ziessow, the chairman of the LRC Standard Revision Committee which drafted the proposed standard, and the second is Nelson Sills, an AKC director and LRC president, who, plaintiffs claim, cast the decisive vote for adoption of the standard by the AKC.

It should be remembered that the height measurement specifications for Labs have been in place for many years. The only change recently made was to make the

standard mandatory, with the qualifications described earlier. There is no evidence to indicate that Ziessow and Sills, and all the others who advocated and voted for the change did not have a right to do so as part of the normal process which would go into *any* establishment of standards. Moreover, *any* standards inevitably provide competitive advantages to dogs that meet the standards and corresponding disadvantages to dogs that do not meet the standards.

In any event, viewing the actions of Ziessow and Sills, in the light most favorable to plaintiffs, as self-serving and anticompetitive, the fact remains that 68% of the LRC membership approved the new height requirement while the AKC board of directors voted to adopt the requirement by as much as 10 to 1. At the very least, the AKC adopted the height requirement by a vote of 6 to 5, assuming, as plaintiffs contend, that there was an unofficial straw vote that preceded the official vote, the latter serving simply to memorialize the board's decision. Thus, the fact that Ziessow chaired the LRC Revision Committee and that Sills may have cast the deciding vote during the AKC straw vote does not create an inference of an agreement to achieve an unlawful objective on the part of a majority of the LRC membership at large, or the other 5 AKC-board members during the straw vote, and 9 members during the final vote, all of whom voted in favor of the new requirement. There is simply nothing, apart from mere speculation, to suggest that the votes of the LRC membership and the AKC board of directors in favor of the height requirement was the result of an anticompetitive agreement rather than a legitimate exercise of the permissible function that defendants are authorized to perform in setting uniform breed standards.

Plaintiffs contend, however, that there were several irregularities in how the LRC came to include the height requirement in the proposed, revised breed standard. Specifically, plaintiffs provide the affidavit of David Schnare who states that the LRC did not provide public notice and opportunity for comment on the new height requirement, that the requirement was adopted by the LRC by only a slim margin in a committee meeting of which certain committee members who opposed the requirement were not given sufficient notice to attend, and that usually such committee activities were carried out by mail rather than in person. In addition, plaintiffs point to the deposition testimony of Ziessow who admitted that he did not seek input concerning the proposed height requirement from anyone outside the LRC revision committee.

Assuming in favor of plaintiffs that all of this occurred and was contrary to the articles or by-laws or established practices governing past LRC Revision Committee activities, a conclusion that is not apparent from plaintiffs' submissions, the fact remains that the majority of the LRC membership voted to recommend the proposed revised breed standard to the AKC. Moreover, the antitrust laws are not intended as a device to review the details of parliamentary procedure. In any event, the majority vote of the LRC *membership* provided a safeguard against plaintiffs' contention that Ziessow may have manipulated the *Revision Committee* into serving his own anticompetitive objectives.

With respect to the AKC vote in favor of the height requirement, apart from the fact of Sills participation discussed above, plaintiffs' simply speculate in their statement of uncontested fact that:

> The AKC Directors decision process was open to mischief and may have been flawed by political vote trading, thus considering issues not properly related to the decisions before it, when considering the standard.

Plaintiffs offer nothing further to impeach the AKC vote. Such speculation cannot substitute for plaintiffs' burden to present evidence tending to exclude the possibility that the new height require-

ment was adopted by the AKC pursuant to its legitimate, standard-setting function.

The proposed revisions in the Labrador Retriever breed standard were returned several times by the AKC to the LRC for review in light of the criticisms raised by its opponents. After a majority of the LRC membership voted in favor of the new mandatory height standard, the AKC solicited still further comment on the new requirement through its own publication. Only then was the requirement adopted by majority vote of the AKC board of directors. Thus, both the proponents and opponents of the new requirement had significant opportunity to advocate and oppose it, and ultimately, for those among them who were members of the LRC or AKC board, to vote for or against it.

The court finds that there is no triable issue of fact as to whether the LRC and AKC engaged in a conspiracy with plaintiffs' competitors in the recommendation and adoption of the new height requirement. Summary judgment is therefore granted to defendants on claims 1, 2, 4 and 5.

 Summary judgment is also granted to defendants on claim 3. Although this claim does not allege a conspiracy between defendants and plaintiffs' competitors, it rests on the allegation that defendants sought to exclude plaintiffs from the market for Champion Labs with the intent to enable plaintiffs' competitors to monopolize that market. For the same reasons that the record is devoid of evidence of an anticompetitive conspiracy, it is also devoid of evidence of any specific intent on the part of defendants in passing the new breed standard to provide plaintiffs' competitors with a monopoly in the market for Champion Labs. Claim 3 is therefore dismissed.

*State Corporate Law Claims*

Claims 6 and 7 are only asserted against the LRC and allege violations of New York Not–For Profit Corporation Law, the LRC's by-laws and breach of fiduciary duty. Neither party has made a motion with respect to these claims. Because there are no federal claims remaining in the action, however, the court declines to maintain jurisdiction over these claims. Claims 6 and 7 are therefore dismissed without prejudice to re-assert them in state court.

**Conclusion**

For the above reasons, defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied. The remaining state law claims are dismissed without prejudice.

SO ORDERED.